COLUMBIA PAPER STOCK COMPANY, Respondent, v. FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant.

St. Louis Court of Appeals, January 19, 1904.

1. INSURANCE: Employer's Liability Policy: Notice of Accident. A stipulation in an "employer's liability" policy that the "assured, upon the occurrence of an accident, shall give immediate notice thereof, with the fullest information obtainable," to the assurer, is a reasonable requirement.

2. ——: ——: ——: "Immediate Notice:" Reasonable Time. Notice of an accident to the insurer given with diligence and in a reasonable time, due regard being had to the attending circumstances, is a legal compliance with the requirement for "immediate notice."

3. ——: ——: Corporation: Notice to Agent. The knowledge of a forewoman that an employee, who had previously worked under her, was sick and claimed that her illness was due to the infected material she was required to work with, was not notice of such claim to the employer, where the duties of such forewoman were to direct employees where and how to work, without power to engage or discharge them.

4. ——: Construction of Policy. The provisions of insurance policies are liberally construed in favor of the insured.

5. ——: ——: Employer's Liability Policy: Accidental Injuries. Kidney disease, contracted by an employee by handling infected rags for her employer, is an injury "accidentally suffered," within the terms of an employer's liability policy.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Percy Werner* for appellant.

(1)   A disease produced by a known cause, as acute kidney disease or dropsy engendered by absorption of poison, resulting from exposure due to handling infected paper or rags, in the regular course of one's employment, is not a bodily injury accidentally suffered within the purview of the employer's policy in evidence in this case.   Bacon v. United States & M. Acc. Assn., 123 N. Y. 304; 26 N. E. Rep. 399; Sinclair Admx. v. Maritime Passgr. Assn. Co., El. & El. 478; Dozier v. Fidelity & Casualty Co., 46 Fed. 446, 449.   (2)   The right of recovery upon a contract of employer's liability insurance does not pertain to all liability which as master assured may incur.   The injury from the consequences of which he is thus protected must not only be one for which he is legally chargeable, but must also be covered by the provisions of the policy.   11 Am. & Eng. Ency. of Law (2 Ed.), 11.   (3)   A disease produced by a known cause can not be considered as accidental. Dozier v. Fidelity & Cas. Co., 46 Fed. 446, 449; Bliss on Ins., section 399; May on Ins. (3 Ed.), section 519. (4)   A condition in an employer's liability insurance policy requiring that the assured shall give immediate notice to the insurance company upon the occurrence of an accident, is a condition precedent.   Underwood Veneer Co. v. Lon. G. & A. Co., 75 N. W. (Wis.) 996; Travellers Ins. Co. v. Myers, 57 N. E. (Ohio) 458; National Const. Co. v. Travellers Ins. Co., 57 N. E. (Mass.) 350; Smith & Dove Co. v. Travellers Ins. Co., 50 N. E. (Mass.) 516; Green v. Northwestern Live Stock Ins. Co., 54 N. W. (Iowa) 349; Edwards v. Insurance Co., 75 Pa. St. 37; Victorian, etc., Co. v. Australian, etc., Co., 19 Victorian Law Reports 139; Wythe v. Manufacturers Acc. Co., 15 Canada L. I. 86; London G. & A. Co. v. Sinwy, 66 N. E. (Ind.) 481; Rooney v. Maryland Cas. Co., 67 N. E. (Mass.) 882; Ins. Co. v. Kyle, 11 Mo. 278, 289; McCullough v. Ins. Co., 113 Mo. 606; McFarland v.

Assn., 124 Mo. 204.   (5)   Courts will not vary the stipulation of parties by introducing equities for the relief of the insured against their own negligence, especially where the court can not put the insurer in as good position as if the agreement had been performed.   N. Y. Life Ins. Co. v. Stratham, 93 U. S. 24; Klein v. Ins. Co., 140 U. S. 88.

*Judson & Green* for respondent.

(1)   The poisoning of Anna Nickel while employed upon respondent's premises by the handling of infected rags or wall paper containing arsenic, negligently placed before her by respondent for assortment, was a "bodily injury accidentally suffered" within the terms of the policy sued upon.   (a)   Because it comes fairly within the meaning and intent of those terms when construed in view of the obvious purpose for which the policy was issued to respondent.   Lovelace v. Travelers Protective Association, 126 Mo. 104; Brown v. Passenger Assurance Co., 45 Mo. 221; Insurance Co. v. Melick, 65 Fed. 168; Isitt v. Passenger Assurance Co., 22 Q. B. Div. 504; Freeman v. Mercantile Accident Association, 155 Mass. 351; Western Commercial Travelers Ass'n v. Smith, 40 L. R. A. 653; McCarthy v. Travelers Ins. Co., 8 Biss. (U. S.) 362; Barry v. Accident Ins. Co., 131 U. S. 100; Peck v. Equitable Accident Association, 52 Hun (N. Y.) 225; Young v. Accident Association, 6 Mont. Sup. Ct. 4; May on Insurance, vol. 2 (4 Ed.), secs. 514-520.   (b)   Because, if there is any ambiguity in the language of the policy, it must be construed most strongly against the insurer, and it is presumed that if any exceptions as to appellant's liability had been intended they would have been expressly stated in the policy in appropriate language.   Dezell v. Fidelity and Casualty Co., 75 S. W. 1102; American Surety Co. v. Pauley, 170 U. S. 145; May on Insurance, vol. 1 (4 Ed.), secs. 174, 175.   (2)   The respondent

was not bound by the terms of the policy to give appellant notice of an "accident" until it had itself received notice or acquired knowledge thereof, and therefore the court did not err in giving respondent's instruction No. 4.    McFarland v. Accident Assn., 124 Mo. 204; Trippe v. Provident Assn., 140 N. Y. 23; Hoffman v. Indemnity Co., 56 Mo. App. 301; Mandell v. Fidelity and Casualty Co., 49 N. E. (Mass.) 110; Woodman's Accident Assn. v. Byers, 55 L. R. A. 291 (Neb.); U. S. Ins. Co. v. Boykin, 12 Wallace 436; Odd Fellow's Assn. v. Earl, 16 C. C. A. 596; Anoka Lumber Co. v. Casualty Co., 30 L. R. A. (Minn.) 689.    (a)    Neither did it err in refusing appellant's instructions 5, 6, and 7, because all of appellant's said instructions declare, as a matter of law, that notice to respondent's forewoman, who merely directed the employees where and how to work, and who had no other duties and no power to employ or discharge any one, was notice to the respondent corporation.  Donham v. Hahn, 127 Mo. 439; Hickman v. Green, 123 Mo. 165; Reinhard on Agency, sec. 358.    (b) Because the question of actual notice, involving the extent of an agent's authority, and also the extent of his knowledge and the manner of acquiring the same, is a question of fact, and, therefore, the finding of the lower court upon that question will not be reviewed here. Eyerman v. Second National Bank, 13 Mo. App. 289; affirmed in 84 Mo. 408; Beattie v. Butler, 21 Mo. 323; Muldrow v. Robison, 58 Mo. 331; Hill v. Tissier, 15 Mo. App. 299.

STATEMENT.

The statement of facts submitted by appellant has been accepted by respondent, and, commending such practice, therefore, with slight modifications, is adopted in the decision of the case.

This is an appeal from a judgment against appellant on a claim arising under a so-called "employer's

liability'' insurance policy.   The petition, which recited
the issuance and the substance of the policy, sets up
that one of plaintiff's employees sued it in the circuit
court of Jackson county, Missouri, for an alleged com-
mon law liability ''for injuries suffered by her in said
premises, to-wit, from accidental blood poisoning caused
by contact with material used in plaintiff's business''
and the recovery of a judgment by said employee of
$1,650, the payment thereof by plaintiff and the refusal
of defendant to indemnify plaintiff therefor.   The con-
tracting clause of the policy, which was filed with the
petition, is an agreement to indemnify, under certain
conditions, ''against loss from common law or statutory
liability on account of bodily injuries, fatal or non-fatal,
accidentally suffered within the period of this policy by
any person or persons while within the premises herein-
after mentioned.''   The only condition of the policy ap-
pealed to in defense of this action is that covered by
number one of the general agreements embodied in the
policy, which reads as follows:

''1.   The assured upon the occurrence of an acci-
dent shall give immediate notice thereof with the full-
est information obtainable at the time, to the home office
of the company at New York city, or to its duly author-
ized local agent.   He shall give like notice with full par-
ticulars of any claim that may be made on account of
such accident, and shall at all times render to the com-
pany all co-operation and assistance in his power.''

The answer admitted the issuance and delivery of
the policy; admitted that plaintiff had been compelled
to pay the said judgment, and that defendant refused
to indemnify plaintiff therefor; denied that said judg-
ment was recovered on account of accidental injuries as
alleged, and set up as special defense the failure of the
defendant to give immediate notice of the alleged ac-
cident, upon the happening thereof, or at any time prior

to the institution of suit by the said employer. The reply denied the new matter set up in the answer.

Plaintiff after introducing the policy, introduced evidence tending to show that one of its servants, Anna Nickel, on May 30, 1900, made claim against plaintiff by instituting suit against it on account of bodily disease caused by the handling of infected rags, or of wall paper containing arsenic, in the ordinary course of defendant's business, the said Anna Nickel being at said time employed by it on its premises in Kansas City, and recovered judgment for $1,650 on said claim, which judgment was affirmed on appeal by the Kansas City Court of Appeals in June, 1902, and which with interest and costs amounted at the time of payment to $1,848.10. Plaintiff introduced the pleadings in the Nickel case, the petition which charged defendant (plaintiff herein), with negligence in delivering to plaintiff to be sorted and cleaned a bale of steaming hot material consisting of waste paper mixed with wall paper, and also a sack of waste paper, old bandages and rags, and pieces of decaying human flesh, all more or less impregnated with some poisonous drug or drugs made up from the cleaning of a hospital, and that she thereby was poisoned and made violently sick by coming in necessary personal contact with said material, and that Bright's disease and dropsy resulted therefrom, and her health became permanently broken down and ruined to her damage in the sum of five thousand dollars, for which the suit was brought. The answer set up that the injuries were the result of risks of the employment which plaintiff had assumed. Plaintiff also introduced in evidence the instructions given to the jury in the Nickel case; those for plaintiff told the jury that the employer was bound to use reasonable means to protect the health of his employees; that if they found her health had been injured through failure to use such means a recovery might be had for such injury to her health, and that plaintiff did not assume in such employ-

ment any unknown peril to her health. Plaintiff likewise introduced in evidence the opinion of the Kansas City Court of Appeals, 95 Mo. App. 226.

Defendant introduced evidence tending to show that the bodily injury sustained by said Anna Nickel was acute kidney disease or dropsy engendered by absorption of poison resulting from exposure in handling infected rags or wall paper in the regular course of her employment, and without violent external injury of any kind, which disease had its apparent inception on April 14, 1900, in an attack of vomiting which was witnessed by the assistant forewoman of plaintiff under whom said Anna Nickel worked on the said premises, at which time the said Anna Nickel gave up her employment, and went home and no more returned to plaintiff's place of business; that on April 24th, 1900, the forewoman of plaintiff, under whom the said Anna Nickel worked for plaintiff, was notified that said Anna Nickel was ill, and that she claimed that her sickness was caused by handling infected paper and rags at defendant's place of business; that the duties of said forewoman were merely to direct employees where to work and how to do their work, and she had no power to engage or discharge employees; that plaintiff's chief office and place of business was at St. Louis, Missouri; that it did not notify defendant of the said injury to or illness of said Anna Nickel on said 24th day of April, or before that time, and that defendant was not notified of such occurrence until May 31, 1900, nor until after suit had been instituted by the said Mrs. Nickel to recover damages for the said injury.

Instructions in the form of propositions of law, (jury having been waived and trial had by the court sitting as a jury) were requested by both parties, and exceptions duly saved as indicated. The finding and judgment of the court was in favor of plaintiff for $1,935.85, and motion for a new trial duly filed was subsequently overruled and appeal perfected to this court.

REYBURN, J. (after stating the facts as above).—
1.  The assignments of error presented by appellant
are subdivided but the argument on its behalf may be
reduced to two principal contentions.   The first of the
general agreements, as they are termed in the policy,
stipulated that the assured upon the occurrence of an ac-
cident should give immediate notice thereof with the
fullest information obtainable at the time, to the home
office of appellant at New York, or its duly authorized
agent, etc.   It appeared in evidence that the chief office
of respondent was in the city of St. Louis, with a subor-
dinate office at Kansas City, where the event occurred,
in charge of a general or assistant general manager,
neither of whom knew of the illness of Anna Nickel
until suit against respondent was brought by her May
31, 1900, in the Kansas City circuit court, which there-
upon, without delay, notified appellant of the claim and
action.   It further appeared that Anna Nickel was suf-
fering from acute kidney disease or dropsy occasioned
by the absorption of virus in handling infected rags or
poisonous wall paper, the first stage of which on April
14, 1900, developed in an attack of vomiting, in presence
of the assistant forewoman of respondent, under whom
Anna Nickel worked; at this the commencement of her
illness the latter abandoned her employment and on
April 24th, ensuing, this forewoman learned of the con-
tinued illness, and that the sufferer claimed her sick-
ness had been produced by handling infected paper and
rags at respondent's place of business.   The duties of
this forewoman were to direct employees where and
how to work, but without power in her to engage or dis-
charge them.   The general manager and his assistant
had general charge and superintendence of the business
of respondent at Kansas City and alone were authorized
to employ or discharge subordinates.   Under this state
of facts appellant insists that respondent failed to com-
ply with the provision of the policy respecting notice.
The demand of such notice under the qualifications pres-

Columbia P. S. Co. v. Fidelity & C. Co.

ently defined, is reasonable and it is material and important to the insurer; the purpose manifestly is to advise appellant promptly of the existence of any claim, putting it upon inquiry, and so afford it full opportunity to investigate the facts attending the occurrence and to enable it to adjust and pay the loss or prepare to resist it, as it may conclude just or expedient.

It may be conceded, as asserted by appellant, that in construing and giving effect to this and similarly worded provisions of like contracts, it has been declared by authority entitled to respect and consideration, that the giving of notice, alike when the accident occurred, and when the claim therefor was made, constituted a condition precedent, which the employer was bound to perform in order to maintain an action on the policy, even in the absence of a forfeiture clause therein, as in the case of Underwood Veneer Co. v. London etc. Co., 100 Wis. 378, where it was further held, after announcement of above principle, that a notice of claim for damages after claim for damages had been made, and first advanced nine months after the accident did not satisfy the requirement that immediate notice should be given of the occurrence of the accident, but the doctrine of this line of decisions is opposed to the weight of authority, and the sounder opposing conclusions reached in other states as well as in this State. As indicated by an eminent commentator on the law of insurance, to give the word "immediate" in such contracts a literal significance in most cases would deprive the insured of indemnity, and policies of insurance would be converted into instruments of fraud. May, Insurance, vol. 2, (4 Ed.), sec. 462.

In McFarland v. Accident Assn., 124 Mo. 218, the legal translation of the word "immediate" as applied to notice was directly considered and it was held that this term could not be construed literally, without, in many cases, causing a forfeiture and that it was frequently impossible under the circumstances of the ac-

cident to give immediate notice, and that this and similar words should be construed to mean within a reasonable time. The decision continued: "So though the time in which the notice shall be given is fixed under the contract, if the circumstances of the accident are such as to make it impossible to comply with the condition, giving the notice within a reasonable time after it becomes possible, has been held sufficient." This language is adopted as expressive of the true rule in the well considered case of Woodmen etc. Assn. v. Byers, 62 Neb. 673.

Provisions of this description also affecting the action of the assured, subsequent to the event, the subject of indemnity and consequently after the loss, if any, has ensued, and the liability measurably attached, have received in this State a construction of the utmost liberality toward the beneficiary to obviate a forfeiture. Our conclusion, therefore, is that if no time is specified, or notice is required to be given immediately, notice given with diligence and in a reasonable time, due regard being had to the attending circumstances, is a legal compliance with such condition. McFarland v. Accident, etc., Assn., supra; Mandell v. Casualty Co., 170 Mass. 173; Dezell v. Casualty Co., 75 S. W. 1102; Hoffman v. Accident Co., 56 Mo. App. 301; Anoka, etc., Co. v. Casualty Co., 30 L. R. A. 689; Trippe v. Provident, etc., Society, 140 N. Y. 23. Nor can the knowledge of the assistant forewoman of respondent of the original attack of sickness of the sufferer, its continuance, and its assigned cause be imputed to respondent. Respondent as employer and principal would not be charged with any knowledge of or notice to its forewoman, unless such knowledge or notice was in respect to a matter within the scope of her duties in respondent's employ. It is obvious that so ordinary an occurrence as the illness and consequent absence of an employee imported no claim or liability under the policy, and it is equally apparent that the knowledge of the forewoman was not

derived as the result or consequence of any notice sought to be given her by virtue of her service in respondent's employ or as its representative. Knowledge of those in the control and the conduct and superintendence of respondent's business at its premises at Kansas City, its general manager and assistant manager, if they had possessed the knowledge of the forewoman, especially that upon the continuation of her illness, Anna Nickel had claimed that her sickness was attributable to handling infected rags and poisonous paper in respondent's employ, might have been asserted to have been the knowledge of the respondent, but not such knowledge on the part of an assistant forewoman, an employee of power and authority proven to have been so limited. A corporate principal is affected with notice to its agents to the same extent and in the same manner as an individual, and can only be charged with notice of those facts in the knowledge of its agents, within the scope of the business entrusted to them. Donaham v. Hahn, 127 Mo. 439; Hickman v. Green, 123 Mo. 165.

2. Appellant further puts forward the contention that a disease produced by a known cause can not be accidental, and, therefore, such a disease as acute kidney disease or dropsy produced by the absorption of poison, consequent on handling infected paper or rags in the course of employment, is not covered by the policy and the legal question is thus sharply presented whether the injuries consequent on such illness resulted from a cause against which the insurance was issued. In the construction of such contracts it is well established, that not only should they be given a fair and reasonable construction so as to give effect to the objects intended by the parties thereto, but any obscurity in the language employed in the contract is to be resolved against the insurer and to receive a broad and liberal interpretation in favor of the assured. Again borrowing from the eminent authority on the law of in-

surance above referred to; "No rule, in the interpreta-
tion of a policy, is more fully established, or more im-
perative and controlling, than that which declares that
in all cases, it must be liberally construed in favor of
the insured, so as not to defeat, without a plain neces-
sity, his claim to the indemnity, which in making the
insurance, it was his object to secure. When the words
are without violence, susceptible of two interpretations,
that which will sustain his claim and cover the loss must
in preference be adopted. May, Insurance, vol.
1 (4 Ed.), sec. 174-5. This doctrine has obtained
recognition and application in the recent decision by the
Supreme Court of Missouri already adverted to, Dezell
v. Casualty Co., supra, wherein it was in substance held
that a policy insuring against bodily injuries sustained
through external, violent and accidental means, but in
terms not covering injuries fatal or otherwise, resulting
from poison or anything accidentally taken, adminis-
tered, absorbed or inhaled, did not bar recovery from
unintentional death resulting from medicine, though
containing poison administered, bona fide, to alleviate
physical suffering. The rule of construction that an
uncertainty respecting the meaning of terms of an in-
surance contract must be determined in favor of that
interpretation favoring the assured, even though other-
wise intended by the insurer, has received the sanction
of this court. Hoffman v. Accident Co., supra; Hale v.
Ins. Co., 46 Mo. App. 509; Laforce v. Ins. Co., 43 Mo.
App. 530. See also American Surety Co. v. Pauley, 170
U. S. 133; Trippe v. Provident, etc., Soc., supra.

As further illustrative of the tendency of the
courts, especially in this State, toward the direction sug-
gested, in rendering and giving effect to the language
adopted in contracts of indemnity against death or in-
jury by causes asserted as accidental, in Lovelace v.
Travellers Protective Assn., 126 Mo. 104, the Supreme
Court in defining the term accident, after a lengthy
revision of the various definitions offered by authori-

tative lexicographers and accepted by appellate courts, held that death, resulting from an affray provoked by the deceased in an effort to eject an intruder from a hotel office, was death by accident within the language of the mortuary certificate involved.   An extensive array of decisions in England, as well as in America, submitted by respondent tend to negative the proposition laboriously sought to be sustained by appellant, that a disease superinduced by a recognized cause is not to be considered accidental.

In Isitt v. The Railway Passengers Assurance Company, 22 Queen's Bench Division 504, the court held that where pneumonia supervened with fatal effect, as result of a cold, where deceased had fallen and dislocated his shoulder and his catching cold and its fatal results were attributable to the condition of health to which he had been reduced by the accident, the death of the assured was due to the effects of the injury caused by accident within the meaning of the policy.

In Travellers Ins. Co. v. Melick, 65 Fed. Rep. 178, the Federal Circuit Court of Appeals, Eighth Circuit, decided that where the insured accidentally inflicted a gun shot wound on himself which produced lockjaw, and eighteen days thereafter he was found with his throat cut and a scalpel in hand, having also been in the throes of tetanic spasms causing intense agony, the question of the proximate cause of his death was for the jury although the language of the policy insured against death, that should result from bodily injuries effected through external, violent and accidental means, alone, independent of all other causes and should not cover death by suicide, sane or insane.

In Peck v. Equitable, etc., Assn., 52 Hun (59 N. Y.) 255, the Supreme Court of New York held that death from embolism or thrombus, which evidence in the case inclined to prove as resulting from a broken arm, was within the terms of a policy covering injuries effected through external, violent and accidental means.

In Freeman v. Mercantile, etc., Assn., 156 Mass. 351, the Supreme Judicial Court of Massachusetts adjudged that peritonitis ensuing fatally from a fall, was embraced in the scope of a policy against bodily injuries effected through external, violent and accidental means, and that the ruling establishing such a significance was in accordance with the apparent purpose and intention of the parties, and made the contract a beneficent provision for the beneficiaries therein named.

In McCarthy v. Travellers, etc., Co., 8 Bissell 362, the United States Circuit Court, Eastern Division of Wisconsin, held that death from rupture of a blood vessel sustained while exercising when the lungs of the deceased were in weak and diseased condition, warranted recovery under a policy restricted to injuries through external, violent or accidental means, and not extending to any bodily injury of which there should be no external or visible sign, nor to any injury happening directly or indirectly in consequence of disease.

In U. S., etc., Assn. v. Barry, 131 U. S. 100, the Federal Supreme Court decided that death from inflammation or stricture of the duodenum, resultant from a jump or downward step might properly be an accident effected through external violence and accidental means, although the benefits of the insurance should not extend to any injury of which there was no external and visible sign, nor to any injury happening directly or indirectly in consequence of disease.

In Young v. Accident, etc., Co., 6 Montreal Law Rep. 3, the Superior Court of Montreal declared that death from erysipelas consequent on a fall and bruising of right leg of assured was embraced within the language of a policy indemnifying against bodily injuries effected through external, accidental and violent means.

In Martin v. Travellers, etc., Co., 1 Foster & F. 505, the policy protected against any bodily injury resulting from any accident or violence, provided that the injury should be occasioned by any external or material cause

operating on the person of the insured and a recovery was sustained where in lifting a heavy burden, the spine was injured.

In North America, etc., Co. v. Burroughs, 69 Pa. St. 43, the policy insured against death in consequence of an accident in case death was caused solely by an accidental injury and the court held that an accidental strain terminating fatally was within the meaning of the policy.

Finally in the case of Fetter v. Fidelity, etc., Co., 174 Mo. 256, the Supreme Court of this State has declared that where the deceased, in a policy to compensate for death, independent of all other causes, by accidental means in attempting to close a widow fell against a chair, causing a rupture of a kidney, from which rupture ensued a hemorrhage causing death, it was properly for the jury to decide whether the cancerous condition resulted from the rupture or whether the rupture would not have occurred had there not been a weakened cancerous condition pre-existing.

Appellant has invoked and appealed to several cases as upholding the doctrine contended for, that a disease produced by a known cause can not be a bodily injury accidentally suffered and therefore in conflict with the foregoing authorities.

In the case of Bacon v. U. S., etc., Assn., 123 N. Y. 304, the Court of Appeals of New York, two of the judges dissenting, held that the deceased did not die from any accident within the range of the policy, but came to his death by disease within the provision of immunity of the contract from death caused wholly or in part by bodily infirmities or disease existing prior or subsequent to date of mortuary benefit certificate, when it was conceded the assured died from a malignant pustule produced by contact with putrid animal matter, and which was denominated by the deciding judge as plainly a disease as smallpox or typhoid fever; and the policy in this case is distinguishable from the case

before us as excepting liability from any bodily injury happening directly or indirectly in consequence of disease or death caused by disease.

In Dozier v. Fidelity, etc., Co., 46 Fed. Rep. 446, the United States Circuit Court of the Western Division of Missouri, after assenting to the proposition that a disease produced by a known cause could not be considered as accidental, merely decided that sun prostration, i. e. commonly called sun-stroke, incurred by decedent in the current course of his business, was not embraced in bounds of a contract of assurance against bodily injuries sustained through external, violent and accidental means and excluding any disease or bodily infirmity.

In Sinclair v. Maritime, etc., Co., 3 Ellis & Ellis 478, the Court of Queen's Bench merely held that the term accident necessarily involved some violence, casualty or *vis major,* and that death from sun-stroke must be considered to have arisen from a natural cause and not from accident happening to deceased upon any ocean, sea, river, or lake within the legal meaning of the policy.

In Southard v. Railways, etc., Co., 34 Conn. 574, it was held under a policy against death by violent and accidental means, that a death though violent must be accidental as well, and the contract in terms embraced only cases where the elements of force and accident concurred in effecting the injury and that injury to an insured injured internally by jumping from a railroad and running a considerable distance was not caused by accidental means.

In Feder v. Iowa, etc., Assn., 107 Iowa 538, the death of an insured was considered not accidental by the Supreme Court, consequent on rupture of an artery in reaching to close a window.

In so far as these latter cases are opposed to the rulings hereinbefore relied on, we must dissent from

such conclusions and adhere to what we deem the sounder reasoning and weight of authority.

If, for example, in lieu of producing the more gradual and protracted infirmities of acute kidney disease or dropsical affection, the infected material submitted to defendant's workwoman had emitted poisonous gases or fumes producing her instantaneous death, or resulting in immediate and violent convulsions, under numberless authorities the occurrence would, in legal contemplation and within the interpretation of policies insuring against accidents, be confidently pronounced accidental, yet such consequences would be disease produced by known causes.

In conclusion after full consideration, upon a fair and legal construction of the terms of this policy, which were for indemnity against loss from common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered, the injury sustained by respondent's employee upon its premises in handling the infected rags and wall paper fell fairly within the true meaning and intent; the judgment below was rendered for the right party and is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.