BASIL *v.* BUTTERWORTH HOSPITAL.

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASES—SCARLET FEVER.
   Scarlet fever contracted by employee in cafeteria of a hospital which did not receive patients suffering from contagious diseases and carefully removed its own patients who became so afflicted to a contagious hospital *held*, not an occupational disease under the circumstances.

2. WORDS AND PHRASES—ACCIDENT—DEFINITION.
   An accident is defined to be an unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence; the effect of an unknown cause, or the cause being known, an unprecedented consequence of it; a casualty.

3. WORKMEN'S COMPENSATION—PURPOSE OF ACT.
   The purpose of the workmen's compensation act is to give compensation for industrial accidents though it permits tradesmen and other employers to elect to be subject to its provisions.

4. SAME—PROTECTION AGAINST INJURY—DISEASE.
   The workmen's compensation act protects against all accidental injuries arising out of and in the course of employment whether the employer was negligent or not, but not against a contagious disease contracted from a fellow employee.

5. SAME—ACCIDENT—SCARLET FEVER.
   Employee, in cafeteria of hospital which did not receive patients with contagious disease, who claimed to have contracted scarlet fever from nurse with whom she came in contact while employed *held*, not to have suffered an industrial accident within the purview of the compensation act.

6. COSTS—WORKMEN'S COMPENSATION ACT—SCARLET FEVER.
   No costs are awarded upon reversal of award to employee in case involving determination of whether or not mere contraction of scarlet fever by an employee from fellow employee was a compensable accident, construction of a public act being involved.

Appeal from Department of Labor and Industry. Submitted April 3, 1935. (Docket No. 57, Calendar No. 38,227.) Decided September 9, 1935.

Emeline Basil presented her claim for compensation against Butterworth Hospital, employer, and Standard Accident Insurance Company, insurer, for an accidental injury received in defendant's employ. Award to plaintiff. Defendants appeal. Reversed.

*Allaben & Wiarda,* for plaintiff.

*Merritt U. Hayden,* for defendants.

BUTZEL, J. On February 20, 1930, plaintiff, an employee in the cafeteria of defendant hospital, became ill while on duty, and was sent home after an examination by an interne. Four days later her ailment was diagnosed as scarlet fever and she was sent to Isolation Hospital. She suffered total disability for a long period after her return home, and is still partially disabled with a condition known as septicopyemia, a disease following scarlet fever, and acute arthritis. Plaintiff claims that she contracted scarlet fever from Miss Brake, a student nurse with whom she came in contact in the course of her employment, and that she is entitled to compensation in accordance with her written application dated April 17, 1934, over three years after she became ill. The deputy commissioner who heard the testimony denied compensation, but his award was reversed by the department, which granted compensation in the amount of $2,112.01 for the period from February 20, 1931, to October 10, 1933, with compensation to be continued from that date at the rate of $9 per week for partial disability until the further order of the department.

The sole question we need consider is whether plaintiff suffered a personal injury arising out of and in the course of her employment entitling her to compensation for the resulting disability.

On February 17, 1931, Miss Brake, the student nurse from whom plaintiff claims she contracted the disease, was found to have scarlet fever and was sent to Isolation Hospital. On February 12th, 13th and 14th, plaintiff was in contact with Miss Brake "all the time, at least twice at every meal every day." She served her with food over the counter, cleared off her dishes in the dining room after she had finished her meal, spoke to her frequently and received orders from her as to the delivery of trays to patients. Plaintiff had occasion to touch Miss Brake's hands in the discharge of her duties, and Miss Brake frequently laughed aloud in plaintiff's presence. Medical witnesses testified that the most infectious period of the disease is during that of incubation, just the time of plaintiff's contacts with Miss Brake. Plaintiff did not live at the hospital, where Miss Brake resided, but claims that she was not exposed to the contagion outside of the hospital. Her family physician testified that there is no history of contagion or disease in her family such as to produce her illness, and that he could discover no possible source of contact outside of the hospital. There was medical testimony that scarlet fever is not air borne and does not pass from one person to another by ordinary conversation, but that it is borne through the mucous discharges from the nose or mouth, and defendant claims that inasmuch as the testimony shows that Miss Brake did not sneeze or cough in plaintiff's presence, plaintiff evidently did not contract the disease from her. The testimony also shows, however, that scarlet fever may

be contracted by handling the dishes of a person coming down with the disease, and by coming in contact with matter deposited thereon by the afflicted person.

Although plaintiff might very possibly have contracted the disease outside of the hospital, the positive declarations of the physicians and the facts as disclosed by the record constitute some basis for the department's finding that plaintiff contracted the disease in the hospital out of and in the course of her employment. As stated in *Blaess* v. *Dolph,* 195 Mich. 137, and *Neudeck* v. *Ford Motor Co.,* 249 Mich. 690, germs cannot be traced in their individual wanderings, like persons, and the most that can be done is to tell the condition that would render infection probable or possible. In *Dunwoody* v. *Royal Indemnity Co.,* 218 Mich., 358, sputum from a patient suffering with influenza accidentally flew into Dr. Dunwoody's face and touched his lips and mouth. Suit was brought to recover on an accident insurance policy. It was not a compensation case.

The disease contracted by plaintiff cannot be considered as an occupational one for defendant hospital did not receive patients suffering from contagious diseases, and anyone who came down with such an illness was immediately removed to a contagious hospital, with the greatest precautions taken to prevent a recurrence of the disease in defendant hospital.

The fundamental question in the case is whether the contracting of a contagious disease by an employee through contact with a fellow employee in the course of his employment can be said to come within the scope of the act as a "personal injury arising out of and in the course of his employment." An examination of the cases in other jurisdictions

affords but little assistance. In many of the States the compensation act differs from that of Michigan, In addition, in most of the cases that have arisen the contagious disease followed a traumatic injury arising from an accident, or was contracted when the employee was required to perform an abnormal task. Many cases are assembled in the annotations in 11 A. L. R. 790, 20 A. L. R. 4, and 57 A. L. R. 631. The courts are not at all in accord on the subject.

In this State the cases of *Blaess* v. *Dolph, supra, Neudeck* v. *Ford Motor Co., supra, Dove* v. *Alpena Hide & Leather Co.,* 198 Mich. 132, and *Frankamp* v. *Fordney Hotel,* 222 Mich. 525, should be noted. Although all of the above cases may be distinguished from the case at bar in some respect, the *Frankamp Case* is somewhat similar. In that case plaintiff was awarded compensation for typhoid fever which she claimed to have contracted from a contaminated well in the hotel in which she was employed. We there defined an accident to be "an unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence; the effect of an unknown cause, or the cause being known, an unprecedented consequence of it; a casualty." We believe that the *Frankamp Case* is an extreme border line case, in which the court may have been impelled to go as far as it did because of the belief that the defendant, being bound to provide its employees with safe premises and suitable appliances, should have seen to it that the water furnished its employees was free from poisonous germs. We limit the rule in *Frankamp* v. *Fordney Hotel, supra,* to the facts therein set forth. While it may be claimed that the distinction between it and the instant case is slight, we believe it both against the letter and spirit of the

compensation act to extend its scope so as to extend compensation to those who in the course of employment and, while not called upon to perform abnormal duties, contract a contagious disease from fellow employees, or other persons not known to have such a disease. The purpose of the act is to give compensation for industrial accidents, though it permitted tradesmen and other employers to elect to be subject to its provisions. It protects employees against all accidental injuries arising out of and in the course of employment, whether caused by the negligence of employer or not, but not against a contagious disease contracted from a fellow employee.

We are much impressed with the following statement of Judge Cardozo in *Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83 (147 N. E. 366, 39 A. L. R. 867):

"Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time. *Jeffreyes* v. *Charles H. Sager Co.*, 198 App. Div. 446 (191 N. Y. Supp. 354), *id.* [affirmed] 233 N. Y. 535 (135 N. E. 907). For this, as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease, and not an accident. Our mental attitude is different when the channel of infection is abnormal or traumatic, a lesion or cut. If these become dangerous or deadly by contact with infected matter, we think and speak of what has happened as something catastrophic or extraordinary, a mishap or an accident (cf. *Lewis* v. *Ocean Accident & Guarantee Corp.*, 224 N. Y. 18, 21 [120 N. E. 56, 7 A. L. R. 1129]), though very likely a dis-

ease also. 'A commonsense appraisement of everyday forms of speech and modes of thought must tell us when to stop.' *Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 51 (120 N. E. 86, 13 A. L. R. 875).''

The contraction of a contagious disease under the circumstances of the instant case is not an industrial accident, and is not embraced in the purpose or provisions of the act. It is unnecessary to consider the other questions raised. The award is set aside, but without costs inasmuch as the construction of a public act is involved.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.