## UNION MINING COMPANY, ET AL. *v.* SAMUEL BLANK

[No. 14, October Term, 1942.]

*Decided October 28, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, MARBURY, and GRASON, JJ.

*Charles Z. Heskett* and *Henry I. Stegmaier* for the appellant.

*I. Duke Avnet,* with whom was *William Taft Feldman* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal by an employer and self-insurer from a judgment of the Circuit Court for Allegany County, affirming an allowance made by the State Industrial Accident Commission to the appellee, who was the claimant. There is no controversy over the facts. A single issue was submitted to the jury, which was whether the claimant sustained an accidental injury arising out of the course of his employment. The appellant had five exceptions, abandoned the first, and now relies upon the remaining four, two of which are to the refusal of the court to instruct the jury to answer "No" to the issue presented. These are exceptions 4 and 5, but they will be considered first because the reversal of this ruling of the lower court would finally dispose of the entire case.

The defendant's "A" prayer is so general in form that we cannot consider it a sufficient compliance with Part 3, Rule 4, of the General Rules of Practice and Procedure, which requires that such a prayer "shall state the grounds therefor." The defandant's "B" prayer, however, asks the court to instruct the jury "That there is no evidence in this case legally sufficient to establish that the claimant sustained an accidental injury within the meaning of the Workmen's Compensation Law of Maryland." In view of the fact that the case turns upon the meaning of the words "an accidental injury," this prayer could not mislead the trial court, nor could this court fail to perceive the grounds upon which the lower court acted. We think, therefore, that prayer "B" is a substantial compliance with Rule 4, under the circumstances of this particular case.

The question raised by prayer "B" and by exception No. 5 to the refusal of the lower court to grant it, can best be understood by relating the facts of the case. The appellee was employed by the appellant in the upper plant of the latter at Mt. Savage, Maryland. The duty of the appellee was to take bricks from the kilns after they had been burned, and put them on box cars or trucks, by means of which they were to be shipped from

the plant. The kilns were hot, and the workmen got quite thirsty and drank quantities of water. The appellee in his testimony said he thought they averaged at least a gallon in eight hours. Sometime in 1940 the company was requested by the men to install a drinking fountain in this upper plant. The company said this would entail too great an expense, but it did provide a laborer with buckets and dippers, and he brought water at the expense of the company from the Old Row Spring to the workmen in the upper plant. The Old Row Spring was about 400 or 500 feet away from the plant and was used as a source of water by people living in the vicinity. It had been used for 100 years, and so far as the record shows, there had been no previous complaint about its water. Prior to the furnishing of its water to the workmen on the upper level, the testimony is not clear whether the workmen used water from it or from some other place. They did, however, have to bring it themselves.

On July 2, 1941, while the appellee was at work, he commenced to feel ill, had to go home, tried it again the next day, had to leave again, and when a doctor was called, his malady was diagnosed as typhoid fever. The same thing happened to eighteen other workmen employed by the appellant in the upper plant, and thirteen other people who were not employed in the plant, but a number of whom at least were in families of men employed in the upper plant. According to the evidence, typhoid bacilli were in the Old Row Spring, and all of these cases resulted from the use of water from that spring. The immediate question, therefore, is whether the infection of the appellee through water furnished him by his employer was an accidental injury within the meaning of the Workmen's Compensation Law.

Paragraph (6) of Section 80 of Article 101 of the Annotated Code of Maryland, as repealed and re-enacted by Chapter 773 of the Acts of 1941, reads as follows: " 'Injury,' 'Personal Injury' and 'Accidental Personal Injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as

may naturally result therefrom, including frost-bite and sun-stroke resulting from weather conditions, and the occupational diseases specified and enumerated in Section 34. of this Article." There is, of course, no contention that typhoid fever is an occupational disease. It is not included in the list of occupational diseases enumerated by the Legislature in Section 34 of Article 101, and has never been so held by any court so far as we have been able to find. That fact does not prevent it from being compensable, inasmuch as the Legislature has specifically said that disease or infection naturally resulting from accidental injuries is compensable. The passage of the Occupational Disease Act, codified in Section 34 and the succeeding sections of Article 101, was for the purpose of permitting the occupational diseases therein listed to become compensable. It was not intended to exclude any nonoccupational disease brought about by accidental injury.

The question when is a disease brought about or accelerated by an accidental injury has been discussed in many jurisdictions with varying results, depending on the statutes in force and the circumstances in each parpicular case. Even in cases where the statutes and facts are similar, courts have disagreed, and it cannot be said that any clear trend of authority exists. It has been generally held, however, that the mere contraction of a disease by an employee while employed does not entitle him to compensation under any Act. Some typhoid fever cases which decide this are *Finlay v. Guardians of Tullamore Union*, 48 Ir. Law Times, 110 (1914) ; *Gendron v. Brown Corp.*, 62 Que. Sup. 450 (1924) ; *Hoffman v. Consumer's Water Co.*, 1940, 61 Idaho 226, 99 P. 2d 919. It has also generally been held that where the disease has an accidental cause, apart from the mere infection, it is compensable. *Bobertz v. Hillside Township*, 1939, 17 N. J. Misc. 396, 9 A. 2d 689; *Id.*, 1940, 125 N. J. L. 321, 15 A. 2d 796. Courts generally seem to have adopted the rule that whether or not a disease is compensable depends upon its causation, but there is a wide diverg-

ence of opinion as to what causation is considered accidental and what is not.

In the early English anthrax case, often quoted, the deceased was sorting wool in a factory where he was employed. The county court judge found as a fact that anthrax, the immediate cause of death, was caused by the accidental alighting of a bacillus from infected wool on a part of the deceased's person, which afforded a harbor from which it could multiply and grow. He also found as a fact that there was no abrasion or pimple, and the intrusion was in the eye. Compensation was awarded and on appeal to the House of Lords, this was affirmed. The several lords delivered opinions, the substance of all of them being that the intrusion of the bacillus in the eye was accidental. *Brinton's Ltd. v. Turvey* (1905) A. C., Sec. 230.

This case was discussed later by the lords in the case of *Eke v. Hart-dyke,* 1910, 2 K. B. 677, and was then stated to be an extreme case, the logic of which could be approved only on the theory that the germ produced an abrasion which developed an infection. This is really no qualification, because the bacillus upon entry, of course, started an injury to the tissues. No abrasion was produced by the bacillus and an abrasion was not the means by which it entered the body of the deceased.

In a Scotch case, the deceased was chilled by working in icy water, as a result of which he contracted pneumonia. This was held accidental by the court, which said: "The present case could never be fairly cited in the future as indicating that the court is willing to hold that a mere ordinary disease entitles the workman to compensation. The court must be satisfied * * * that the disease was attributable to some particular event or occurrence of an unusual and unexpected character incidental to the employment which could, in the light of the decisions, be fairly described as an accident." *Alloa Coal Co. v. Drylie,* 1 Scot. Lt. 167.

In a New York case, decided in 1890, which, however, was based upon an accident insurance policy, the ques-

tion was whether deceased died from disease or accident. The cause of death was malignant pustule, a bacillus disease caused by a virus from the hide, hair or wool of animals. The majority of the court held that the death was from disease and not accident, but Judge O'Brien, in a dissenting opinion, held that the inflicttion of animal virus by some exterior force upon the person of the deceased was an accident. *Bacon v. United States Mutual Accident Assn.*, 123 N. Y. 304, 25 N. E. 399.

The principal New York case was decided in 1925. The opinion is by Justice Cardozo, afterwards an Associate Justice of the Supreme Court of the United States. This was a blood poisoning case, where the employee of an embalmer handled a gangrenous corpse and got some of the poisonous matter in a cut on his hand and in a pimple on his neck. The court allowed compensation, but held that in cases where germs entered the system through normal channels of entry, such as the nose or mouth, their inroads could seldom if ever be assigned to a single or determinate act identified in time or space. For this reason, as well as that, such absorption is incidental to the bodily process, the action of such germs, according to Justice Cardozo, presents itself to the mind as a disease and not an accident. The situation is otherwise when the channel of infection is abnormal or traumatic. Then, even though a disease is produced, what has happened is spoken of as something catastrophic or extraordinary, a mishap or an accident. *Connelly v. Hunt Furniture Co.*, 240 N. Y. 83, 147 N. E. 366.

There is a later New York case, decided in 1935, in which the facts seem to be almost identical with those of the case before us. The court held that the typhoid fever contracted in that case was not an accidental injury and was not compensable. It is probable that the distinction made by Justice Cardozo was followed, but as only a *per curiam* opinion was filed, the grounds for the decision are not given. *McDonald v. Belle Terre Lodge*, 268 N. Y. 663, 198 N. E. 546.

The Massachusetts law compensates personal injuries and does not use the words "by accident." In the early Massachusetts cases, notably *Hood & Sons v. Maryland Casualty Co.*, 206 Mass. 223, 92 N. E. 329, which was an infection with glanders, *Johnson v. London Guarantee & Accident Co.*, 217 Mass. 388, 104 N. E. 735, a lead poisoning case, the court held that such diseases were injuries. In the latest case, however, the court held that the inhalation of tuberculosis germs did not result in personal injury, but in producing a disease, which seems hard to reconcile with the earlier decisions. *Smith's Case*, 307 Mass. 516, 30 N. E. 2d 536.

In Ohio, the compensation law was passed in pursuance of the Constitution of the State, which authorized compensation "for death, injuries or occupational disease." Const., Art. 2, Sec. 35. The court held that the term "injury" did not include typhoid fever contracted in the course of employment and expressed a fear that if a contrary view were taken, practically every disease which might be contracted by workmen would be covered, and the State would be engaged in health and life insurance instead of compensation. The dissenting opinion, however, said that such a result could not follow because the employment itself would have no causal connection with the injury. In the case before the court, the claimant was an employee of the Park Department of Cincinnati and contracted typhoid fever by drinking water from a spring located in the park. *Industrial Commission v. Cross*, 1922, 104 Ohio St. 561, 136 N. E. 283.

In New Jersey the cases turn upon the question whether a disease is an "injury by accident." The early case follows what the court says is the English view, that where no specific time or occasion can be fixed upon as the time when the alleged accident occurred, there is no injury by accident. *Liondale Etc. Works v. Riker*, 1914, 85 N. J. L. 426, 89 A. 929, 931. The latest case, first heard in the Supreme Court of New Jersey, involves the revival of tuberculosis by reason of fumes. It was a damage suit for failure to provide proper devices to

prevent the contraction of disease. The court said that in the State of the case before it, the point that the injury was not compensable under the Workmen's Compensation Act, N. J. S. A. 34:15—1 et seq., could not be considered. This was a defense. The court did, however, state by way of dictum that tuberculosis is not compensable, unless it results from accident, and cited as authority the *Liondale Case, supra*. The Court of Errors and Appeals affirmed on the jurisdictional ground, but concurred in the view of the Chief Justice of the Supreme Court that the injury was not compensable. *Dailey v. Mutual Chemical Co.*, 1940, 125 N. J. L. 465, 16 A. 2d 557; *Id.*, 1941, 126 N. J. L. 426, 19 A. 2d 778.

In Minnesota, an employee contracted typhoid fever by drinking infected water furnished in the employer's factory for the use of the employees. The Minnesota statute provides for compensation for personal injury "caused by accident," Gen. St. 1913, Sec. 8203, and the court adopted the view which the opinion said had been held by the English, Michigan, New Jersey and Ohio courts. It was held that, as the disease germs were not taken into the system in consequence of anything that appeared suddenly and violently, compensation must be refused. *State ex rel. Faribault Woolen Mills Co. v. District Court*, 1917, 138 Minn. 210, 164 N. W. 810, *L. R. A.* 1918F, 855.

Michigan cases, however, do not seem to hold as the Minnesota court indicated. In one of the leading cases, an employee of a hotel contracted typhoid fever from drinking water from an artesian well on the hotel property which was piped through the hotel. She roomed and boarded in the hotel. The court held that typhoid fever was not an occupational disease, that the drinking of the water was an accident, and allowed compensation. The court took the dictionary definition of "accident" as being an unforeseen event or an unexpected, unusual or undesigned occurrence, and said: "How could Miss Frankamp foresee that, if she drank the water supplied to her in the hotel, she would be attacked with

'typhoid fever'?" *Frankamp v. Fordney Hotel,* 1923, 222 Mich. 525, 193 N. W. 204.

In a later case, an employee in the cafeteria of a hospital contracted scarlet fever, which, from the testimony, she apparently got from a fellow employee. The court said this was not a personal injury and declined compensation. It attempted to distinguish the case before it and the *Frankamp Case, supra,* on the ground that: "The court may have been impelled to go as far as it did because of the belief that the defendant, being bound to provide its employees with safe premises and suitable appliances, should have seen to it that the water furnished its employees was free from poisonous germs." *Basil v. Butterworth Hospital,* 1935, 272 Mich. 439, 262 N. W. 281, 283.

In Idaho, an employee died of typhoid fever contracted while cleaning an irrigation ditch. The Idaho statue, Code, 1932, Sec. 43-1801 et seq., compensates "accidental injury incurred in the course of and arising out of his employment." The court held there was no proof either of accident or injury resulting from an accident. *Hoffman v. Consumers Water Co.,* 1940, 61 Idaho 226, 99 P. 2d 919.

In Kentucky, the statute says that compensable injuries shall be "personal injury sustained by the employee by accident" and there is a proviso that "personal injury by accident * * * shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident." Ky. St., Sec. 4880. Under this statute, the court held that typhoid fever contracted by an employee drinking impure water furnished by his employer was not a compensable injury. *Mills v. Columbia Gas Construction Co.,* 1932, 246 Ky. 464, 55 S. W. 2d 394.

In Texas, the Act defines "compensable injury" as "damage or harm to the physical structure of the body and such diseases or infection naturally resulting therefrom." *Vernon's Ann. Civ. St.,* Art. 8309. An employee contracted typhoid fever through the food .or drinking

water which his employer was required to and did furnish him under his contract of employment. The court held that under the wording of the Texas statute it must be shown that the disease is a direct result of an injury. It, however, said: "In those States where the Workmen's Compensation Act provides that an injury is compensable which is caused by accident and which grows out of and is incidental to the servant's employment, the weight of authority seems to be that a disease is a compensable injury if it was contracted by the employee while engaged in and as a result of his employment." *Buchanan v. Maryland Casualty Co.*, 1926, 116 Tex. 201, 204, 288 S. W. 116, 117.

One of the leading cases much quoted and discussed comes from Wisconsin. An employee of a manufacturing lumber establishment in which polluted river water was permitted to mingle with water from the city water works, contracted typhoid fever therefrom and died. The Wisconsin Act provides for compensation "for any personal injury accidentally sustained." St. 1913, Sec. 2394—3. The court said: "The fact that deceased became afflicted with typhoid fever while in defendant's service would not in the sense of the statute constitute a charge that he sustained an accidental injury, but the allegations go further, and state that this typhoid affliction was attributable to the undesigned and unexpected occurrence of the presence of bacteria in the drinking water furnished him by the defendant, as an incident to his employment." And further: "The cases wherein liability has been found distinguish between disease resulting from accidental injury and disease which results from an idiopathic condition of the system, and not attributable to some accidental agency growing out of the employment. The latter class of diseases are held not to be within the contemplation of the Act." Compensation was allowed, although there was a dissenting opinion. *Vennen v. New Dells Lumber Co.*, 1915, 161 Wis. 370, 374, 154 N. W. 640, 642.

The Circuit Court of Appeals for the Ninth Circuit had a suit before it on an employer's liability policy indemnifying the insured against loss and expense from claims on account of bodily injuries accidentally suffered by employees. Certain employees contracted typhoid fever from water furnished by the appellee. The latter was compelled to pay damages and brought suit. The court said that "the accident consists in that unexpected happening. Among the definitions of the word 'accidental,' in most, if not all, of the dictionaries, is the happening of 'something unexpectedly, unintentionally'." The decision was that the harm done to the workmen constituted a bodily injury accidentally suffered. *Aetna Life Insurance Co. v. Portland Gas & Coke Co.,* 1916, 229 F. 552, 553.

In Maine, the claimant was working for the State Highway Commission and was furnished board and lodging by his employer at a camp near the road in process of construction. The water supplied was taken from a nearby spring and brooks. He contracted typhoid fever. The contention was made that there was no outside visible causative accident, that the disease had no traumatic origin, and therefore was not compensable. The court held that the disease was not occupational and compensation depended upon whether it was a personal injury by accident within the terms of the Maine Compensation Act. Many of the English and American cases were discussed. The court declined to take the view that a disease must have a traumatic origin. It follows what it says is the weight of authority, that the disease was produced by unexpected and therefore accidental means and was compensable. There is a concurring opinion which says that if it had appeared in the facts that no definite time could have been fixed when the accidental transmission of the germs took place, then the disease would not have been compensable. This, however, was not indicated as the view of the majority of the court. *Brodin's Case,* 1924, 124 Me. 162, 126 A. 829.

In Indiana, the law provided for compensation for "injury by accident" which "shall not include a disease in any form except as it shall result from the injury." Acts of 1919, p. 175, Sec. 76. Notwithstanding this definition, the court affirmed an award of compensation to an employee in a cabinet factory who contracted typhoid fever by drinking water furnished by his employer from a well in the factory and pumped through pipes for the use of the employees. The court held that the injury occurred when the bacillus set up an inflammation of the intestines, and said that the entering of typhoid germs into appellee's intestines by reason of drinking the polluted water furnished him for that purpose might rightfully be termed an accident. The court said: "It is obvious that in any given case involving disabilities so resulting the inquiry must always be, Did the disease result from an injury by accident, arising out of and in the course of the employment? * * * The injury, however, need not be produced by violence, as our statute, unlike those of some other States, does not so provide. It suffices in that regard, whatever the accident may have been, if it produces a lesion or change in any part of the system which injuriously affects any bodily activity or capability. * * * But it must be borne in mind that the injury must be by accident arising out of and in the course of the employment. This limitation alone will have the effect of preventing a recovery of compensation for diability resulting from diseases generally, as it is clear that a disease contracted by an employee though such usual intercourse with his fellow workmen as is common among men, and not because of any unusual circumstance connected with his employment, cannot be said to be an accident within the meaning of the Workmen's Compensation Act." *Wasmuth-Endicott Co. v. Karst,* 1922, 77 Ind. App. 279, 284, 133 N. E. 609, 611.

In Illinois, plaintiff's decedent died from typhoid fever contracted from the water furnished the employees in the overall factory of the appellant where she worked. There was an epidemic in the factory and a few cases

in the families of employees who had the disease, but none outside the employees except these. The factory was located in a village which had no water works or sewage disposal system. The facts are, in these last respects, similar to those of the case before us. The court allowed compensation for these reasons: "In this case the deceased intended to drink the water furnished by the defendant in error, but she did not intend to drink polluted water or water contaminated with typhoid germs. The contraction of typhoid fever by the deceased from the drinking of such water was unexpected and not foreseen by her, and may therefore be said to be accidental." *Rissman & Son v. Industrial Commission,* 1926, 323 Ill. 459, 467, 154 N. E. 203, 206.

In Iowa and Missouri, on employer's liability policy cases, it was held that disease produced by unexpected means was accidental. *Delaney v. Modern Accident Club,* 1903, 121 Iowa 528, 97 N. W. 91; *Columbia Paper Stock Co. v. Fidelity & Casualty Co. of New York,* 1904, 104 Mo. App. 157, 78 S. W. 320.

In California, a man employed by a company operating drug stores was sent from his normal place of employment in San Francisco to various cities throughout the country. While in New York, he ate some raw oysters at his hotel and contracted typhoid fever. The court denied him compensation on the ground that he had no special exposure in excess of the community generally, but in so doing approved an earlier case (*San Francisco v. Industrial Accident Commission,* 183 Cal. 273, 191 P. 26), which had held that diseases not occupational resulting from exposure to contagion or infection under unusual conditions arising out of the employment were compensable under the California Act. *Pattiani v. State Industrial Accident Commission,* 1926, 199 Cal. 596, 250 P. 864.

In this court, the question has not before been precisely presented, but there are a number of cases bearing on certain phases of the subject. One of the earlier of these is the often quoted phosphorus poisoning case, in

which suit was brought against an employer who was a fireworks manufacturer. One of the defenses was that the plaintiff was covered by the Maryland Workmen's Compensation Act, Code, 1939, Art. 101, Sec. 1 et seq., and this defense was found to be good. Employee gradually contracted phosphorus poisoning through the inhalation of dangerous and noxious fumes and gases. The court said that phosphorus poisoning was not an occupational disease and was the gradual result of the negligence of the employer, which was a breach of duty to her and was not to be foreseen or expected. Her injury was therefore held to be accidental. The infection was held to be the injury, and the fact that it was gradual did not alter its accidental nature. The accident was said to be invasion of the bacillus and the court said: "The introduction of phosphorus into the human body is none the less accidental, if through the medium of pimple point, an unsound tooth, a scratch, or a lesion, or of ingestion or in breathing." *Victory Sparkler Co. v. Francks,* 147 Md. 368, 380, 128 A. 635, 639.

In another case, the employee had tuberculosis which was aggravated by his inhalation of dust in a poultry and dairy food manufactory. The court held that this dust was an ordinary incident to the employment and that there was no external injury of any kind or character which produced it, and no unusual extraordinary condition not naturally an ordinary incident thereof. *Cambridge Manufacturing Co. v. Johnson,* 160 Md. 248, 153 A. 283.

This case was followed by a cerebral hemorrhage case caused by heat. The court said in that case: "* * * A disease, even though gradual and insidious in its approach, which is caused by casual, unexpected conditions in the employment which increase its hazards, but which the employee is not bound to anticipate not only arises out of the employment, but is compensable, because it is accidental." *Schemmel v. T. B. Gatch & Sons Contracting & Bldg. Co.,* 164 Md. 671, 684, 166 A. 39, 44.

This court also permitted a compensation to a truck driver who suffered a cerebral hemorrhage, causing paralysis as a result of seeing a man jump off a truck in front of him. The facts are not in point, but the court, in its interpretation of the Act, states some principles that are helpful to the decision of this case. "The adjective 'accidental' qualifies and describes the injuries contemplated by the statute * * * as having the quality or condition of happening or coming by chance or without design, taking place unexpectedly or unintentionally. (Cases cited.) So, if a servant, while at work, suffers or is made ill from natural causes, the state or condition is not accidental, since it is a natural result or consequence which is normal, and to be expected. If, however, there is a subsisting condition of illness or incapacity or physical disability which is caused, increased or accelerated by some act or event coming by chance or happening fortutiously, then the requisite quality or condition of the injury will exist so as to make it accidental. (Cases cited.) Nor is it necessary for the accidental quality or condition to be given or created by wound or external violence, as is illustrated by many instances. (Cases cited.)" *Geipe, Inc. v. Collett*, 172 Md. 165, 168, 190 A. 836, 838.

In one of the latest cases, the facts of which need not be discussed for the purposes of this opinion, the court again defined "accident" and affirmed the conclusion in the Victory Sparkler case, that an injury may be accidental even though the conditions which caused it extended over a considerable period of time. *Foble v. Knefely*, 176 Md. 474, 6 A. 2d 48.

In the latest case involving silicosis, now an occupational disease, but at the time of the employee's death not compensable, the *Victory Sparkler Case, supra,* was quoted as holding that an act of negligence producing such a disease might render it accidental and so compensable under the Act. *State, to Use of Wilson v. North East Fire Brick Co.,* 180 Md. 367, 24 A. 2d 287.

From these quotations it will be seen that under the Maryland law an accidental injury is one happening by chance or taking place unexpectedly or unintentionally; that the injury need not be created by wound or external violence; and that the conditions causing an injury do not have to be confined to a particular and single time and place, but may extend over a considerable period. Under the Maryland Act, therefore, a number of the quoted decisions from other jurisdictions would be decided differently.

An application of the previous decisions of this court to the facts of this case shows in the first place that the acquisition of typhoid fever by the appellee was accidental. It is not necessary in order to decide this to base it upon the negligence of the employer, which was largely the basis of the decision of the court in the *Victory Sparkler Case, supra.* It is true that employers who undertake to furnish water for employees are bound to take reasonable precautions to see that such water is free from germs and dangerous impurities. *Geller v. Briscoe Manufacturing Co.,* 136 Mich. 330, 99 N. W. 281; *Basil v. Butterworth Hospital,* 272 Mich. 439, 262 N. W. 281. Just what precautions should be taken depend upon the facts in each particular case. Where the water is part of a city water supply which is regularly tested, it would not ordinarily be necessary for the employer to test the water again, although he should see that the means by which it is brought to his employees are kept uncontaminated. Where water is brought from a well or spring, the exercise of ordinary care would indicate that it should be regularly tested. This is so, even though it comes from a well such as the one in the case before us, which has been used with apparent immunity by the community for one hundred years. It is, however, not necessary for us to decide in the case before us that the appellant was negligent, because the finding of typhoid bacteria in the water was clearly unexpected and was something which the employee did not look for and had no reason to suppose existed. Under the definition

given "accidental" by this court and by the majority of the other courts passing upon it, and by the standard dictionaries, the introduction of the typhoid bacilli into the system of the appellee was therefore accidental.

The injury was the infection or the ulceration of the intestines by the bacilli and it clearly arose out of and in the course of the employment, because, according to the testimony, the appellee drank the water while working, and it was water furnished to him by his employer as part of the working conditions under which he labored. The court below, in our opinion, ruled correctly in refusing the defendant's "A" and "B" prayers.

The appellant's second exception is to the granting of the claimant's burden of proof prayer. This prayer sets out that the decision of the State Industrial Commission is *prima facie* correct. The objection made to this prayer is that it does not confine itself to questions of fact, but indicates that it also refers to a question of law. It is difficult to follow the appellant's reasoning in this respect. While the evidence was all on the part of the claimant, the facts were not admitted, and the jury had to make a finding based on such facts as they found to be true. Upon the questions of law, the court ruled by granting claimant's prayer No. 3, hereafter discussed and by declining to take the case from the jury. The jury was, therefore, instructed in effect that if they found the facts shown by the testimony, they constituted an accidental injury and the burden of proof was upon the appellant to reverse the action of the commission. The appellant was not hurt by this instruction unless the court's construction of the law was erroneous, and we have already said that it was correct. The words "accidental injury" are further defined in claimant's prayer No. 3, which was granted, and this, in connection with claimant's prayer No. 1, gave the jury their proper instructions on the law and on the burden of proof as to the facts.

The appellant's third exception is to claimant's prayer No. 3, which it says contains four abstract principles of

law, making for endless confusion in the minds of the jury. We do not so find. The question submitted to the jury is whether the appellee sustained an accidental injury. The court by granting claimant's prayer No. 3 properly defines "accidental," instructs the jury that the accidental nature is not lost by calling the consequential results a disease or by the fact that a dangerous substance was taken into the system by ingestion, and that there need not be an external wound or violence. These statements of law which we have already shown are correct have a direct bearing on the definition of "accidental injury" and are proper instructions for the court to give to the jury to aid them in answering the question submitted.

We find no errors in the rulings of the trial court, and, therefor, the judgment will be affirmed.

*Judgment affirmed, costs to be paid by the appellant.*