HELEN SLASKA *v.* EDWARD D. IDZI
[No. 139, October Term, 1945.]

*Decided May 17, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Marion A. Figinski* for the appellant.

*Arthur R. Padgett* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Helen Slaska, appellant in this case, arranged with the appellee in June, 1944, to install a one-third horsepower General Electric refrigeration unit in the meat box of her store for the sum of $300. The unit was installed, but was not satisfactory, and was eventually moved by appellee into appellant's yard. Appellant had paid $200 when it was installed and the balance of $100 was to be paid at the end of sixty days. The appellee then agreed to install a larger three-quarter horsepower unit for the additional sum of $75. The larger unit was brought to the appellant's place and installed on September 26, 1944. There is some question in the evidence whether the one was installed which appellant had picked out, or whether it was another one, but in any event after the installation, the appellee demanded the balance of $100 on the old

unit and $75 on the new, or a total of $175 with the addition of the cost of the installation. Appellant refused to pay him because she said she wanted to try the unit out, whereupon appellee disconnected the system, and started to take it away, but appellant refused to permit him to do so. Thereafter there was some complaint about the wiring made by Mrs. Slaska to the city and the city inspector said it was not done correctly, and that the man who did it did not have a license. Appellee was subsequently fined. However, this complaint and the charges preferred had nothing to do with the refrigeration, but only with the electrical service coming into the building. It is not shown that this affected in any way the operation of the new unit. Mrs. Slaska had the second unit hooked up by a man from another company, and used it for about two months, according to her own testimony. She claimed that the second machine operated the same as the old one, and made too much noise, that she called up the appellee about it, but he did not do anything. Then she had a new sytem put in, in place of the second one, by another company. When the latter company started to put in its system, the appellee was asked by it if he wanted to get his unit, and he said that he did not want to have anything more to do with it. Thereafter, he brought suit in the Superior Court in Baltimore City against her for $175 which equalled the balance due on the first machine, and $75 to be paid on the second machine. The declaration asked for installation charges, but this was not allowed. The appellant filed a prayer for a directed verdict, which was refused. After the verdict she filed a motion for judgment n. o. v. which was also refused. From the judgment entered in favor of the plaintiff against her, she now appeals.

A preliminary question is the appellant's prayer for a directed verdict. It is a sort of combination between a variance prayer and a demurrer prayer, and reads as follows: "The Defendant prays the Court to instruct the Jury that there is no legally sufficient evidence in this case under the evidence and the pleadings to entitle the

Plaintiff to recover, therefore, the verdict of the Jury must be for the Defendant." It states no grounds. Under Part 3, Subdivision 3, of the Rules of Practice and Procedure, Rule 4, it is provided that a motion for a directed verdict shall state the grounds therefor. We have held that where there is but one issue of fact to which a motion or prayer for a directed verdict can apply, it is not necessary to set out specifically the grounds. *Rinehart v. Risling,* 180 Md. 668, 26 A. 2d 417; *Union Mining Co. v. Blank,* 181 Md. 62, 28 A. 2d 568. In the case before us there are a number of issues of fact, and it is not indicated just what questions the prayer or the motion for judgment *n. o. v.* intend to raise. We think the prayer is defective for this reason.

The appellant's contentions seem to be twofold; first, that the appellee did not complete his contract and, second, that when she tried the unit it did not work properly. On the first point the parties appear to be agreed on the facts. The appellee did install the unit, but when appellant refused to pay the balance of the sum she had agreed to pay, he disconnected it and was going to take it away. If appellant had permitted him to take it away, this case would not have arisen in its present form. However, she kept the unit and used it for two months. It appears, therefore, that the appellee did what he was expected to do by way of installation, or at least that there is sufficient evidence of it to permit a jury to pass upon this question, and the question whether the appellant waived her right to disavow the contract by keeping and using the unit.

On the other question raised, which is whether the unit operated satisfacorily, there is only the slightest sort of evidence, which is not given by anyone experienced in the business, but only by the appellant and by a customer of hers who knew nothing about machiery. In the case of *Petite v. Homes,* 184 Md. 377, 41 A. 2d 71, 76, Judge Markell, speaking for the Court, said (omitting the supporting authorities) : "For a breach of warranty the buyer may maintain claim for damages either

(a) by recoupment or (b) by independent action or counterclaim. * * * Ordinarily, the measure of damages is the difference between the value of the article received and the value of the article contracted for * * *, e. g., the cost of correcting the defect. * * * The buyer is not entitled to profit by replacement of the defective article with an article better than the one contracted for * * *, or to recover the cost of unnecessary replacement when the defect can be corrected without replacement. * * * In recoupment (as in an independent suit or counterclaim) the burden of proof of damages for breach of warranty is upon the buyer. * * * In the absence of legally sufficient evidence of damages, he cannot recover anything for the breach (except perhaps, in case of an independent suit, nominal damages)." In that case the question was whether a heating plant which had been installed, heated adequately. The property owner had the plant replaced with another. On that point we said: "Insufficiency of the plant to heat adequately is not shown by evidence that on occasions it did not heat adequately, without showing that it was properly operated, with sufficient fuel. * * * There is no evidence of: (a) any special qualifications of the defendant to express an opinion as to the sufficiency of a heating plant * * *; (b) facts which might serve as a basis for an expert or nonexpert opinion from the defendant on the subject, or for either of the opinions ascribed by him to Wiessner; or (c) the cost of (i) repairing the leak or (ii) adding to the plant in the manner ascribed to Wiessner and Kishter. The mere fact of replacement of an oil plant with a coal plant in October, 1943, is not evidence of insufficiency of the oil plant." These quotations are applicable to the present case. If the appellant intended to recoup, she did not produce sufficient evidence to show what was the matter with the second refrigerator, or why she had to replace it. There is nothing to show that she knew anything about a refrigerating unit and there is no evidence from any person who had any expert knowledge on the subject. However, all of the evidence

given was permitted to go to the jury without any restrictive instructions on the subject at all, so that the appellant had at least as much, if not more, than she was entitled to on this point.

We are unable to see any reason why the case should have been taken from the jury, even had the prayer been in proper form, or why the motion for judgment *n. o. v.* should have been granted.

*Judgment affirmed, with costs.*