BELLE ISLE CAB COMPANY, INC., ET AL. *v.* LOUISE MAST TRAMMELL ET VIR

[No. 139, September Term, 1961.]

*Decided January 25, 1962.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Patrick A. O'Doherty,* with whom were *William A. Hegarty* and *O'Doherty, Gallagher & Hegarty* on the brief, for appellants.

*Melvin J. Sykes,* with whom were *Roland Walker* and *Richard E. Painter* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

The principal question to be decided in this tort action arising out of a collision between two motor vehicles is whether there are two intersections or one within the area between the north and south sides of Oliver Street in the City of Baltimore and between the east side of Central Avenue and the west side of Harford Avenue. If the area is one intersection it is possible that the judgment below could be affirmed. But if there are two intersections in the area, then the judgment must be reversed.

Central Avenue, running in a northwesterly direction, and Harford Avenue, running in a northeasterly direction, after converging for some distance, finally merge into one street. The entire area northward from the south side of Oliver Street and between the east side of Central Avenue and the west side of Harford Avenue, up to the point (a short distance north of the north side of Oliver Street) where the two avenues merge into one, was a single unbroken triangular-shaped space paved with macadam. The three streets comprising most of the area were not marked or separated in any way to indicate where one street ended and the other began. Nor was there any channelization of traffic in the area. However, all of the streets were two-way streets and traffic was permitted in both directions on all of them. Both Central and Harford avenues had been designated by separate ordinances as boulevard or through streets and had been treated and used as such for several years. But apparently there was nothing to indicate that these streets were throughways. Nor does it appear that either of the operators knew they were throughways.

There were no mechanical traffic signals at the intersections. At the *northeast* corner of the Oliver-Central intersection there were double stop signs, one facing east for westbound traffic, and the other facing west (apparently as an extra sign) for eastbound traffic. At the *southwest* corner of this Oliver-Central intersection there was also a stop sign facing west for eastbound traffic. And at the *southwest* corner of the Oliver-Harford intersection there was a stop sign facing west for eastbound traffic. But there was neither a stop sign nor a "stop line" on Oliver Street at or near the unmarked northeast

corner of the Oliver-Harford intersection. Nor was there an east-facing stop sign at either the *northwest* or *southwest* corners of this Oliver-Harford intersection. There were also no curbs, islands, street signs or other markings [1] within the triangular-shaped area along the north side of Oliver Street to warn westbound traffic that there were in fact two intersections (instead of one) in the area.

At the time of the accident, Oliver Street was thirty-nine feet wide. Central Avenue was approximately forty-one feet wide from curb to curb and Harford Avenue was thirty feet wide from curb to curb at its southerly intersection with Oliver Street. The distance between the stop signs at the northeast corner of the Oliver-Central intersection across the macadam paving to a point at or near the northwest corner of the Oliver-Harford intersection was approximately one hundred and thirty-two feet. And, since the combined width of Central and Harford avenues was seventy-one feet, the intervening space between the westerly side of Central and the easterly side of Harford was approximately sixty-one feet.

In the early morning of May 5, 1958, the plaintiff (Louise Mast Trammell) was operating an automobile in a northerly direction on Harford Avenue. At the same time one of the defendants (Robert P. Lowers, Jr.) was operating a taxicab of the other defendant (Belle Isle Cab Co., Inc.) in a westerly direction on Oliver Street. When the plaintiff had almost completed crossing the Harford Avenue-Oliver Street intersection, the automobile was struck on its right side by the taxicab, which, having crossed the Oliver Street-Central Avenue intersection without a mishap, also crossed the intervening space between the westerly side of Central Avenue and the easterly side of Harford Avenue, and entered the Oliver-Harford intersection without stopping. There is a conflict in the evidence as to whether the taxicab had stopped before

---

1. Subsequent to the accident the city constructed an "island" on the normally untraveled portion of the triangular area north of Oliver Street and between the converging Central and Harford avenues and erected a stop sign along the base of the triangular island to control the movement of westbound traffic across the Oliver-Harford intersection.

entering the Oliver-Central intersection. The cab operator claimed that he did, but the passenger in the cab testified that he did not. The plaintiff, who had been following a sand and gravel dump truck northward on Hardford Avenue at about twenty to twenty-five m.p.h., testified that when the truck turned right into a filling station on the south side of Oliver Street between Central and Harford avenues, she looked both left and right, and, not seeing any approaching traffic west of Central Avenue, entered the Harford-Oliver intersection at a reduced rate of speed. The cab operator testified that after he had crossed Central Avenue and was proceeding west at about seven m.p.h., he looked both left (where his vision was obscured by a truck parked at the filling station) and right and then back to the left again, when, for the first time, he saw the Trammell automobile right in front of him.

At the trial of the case below, the court refused to admit evidence proffered to show (a) that there was no stop sign controlling westbound traffic at the intersection of Oliver Street with Harford Avenue; (b) that a stop sign (according to the specifications in the sign manual adopted by the State Roads Commission) should have been erected along the north side of Oliver Street not closer than six nor more than fifty feet from the northeast corner of the Oliver-Harford intersection; and (c) that a stop sign had been erected at that point subsequent to the accident. At the close of the evidence, the court denied the motion of the defendant for a directed verdict based on the theory that the plaintiff was guilty of contributory negligence as a matter of law. Furthermore, the court refused to instruct the jury with respect to Code (1957), Art. 66½, § 231 (a),[2] requiring a vehicle approaching from the left to give the right of way to a vehicle approaching from the right at an intersection that is not controlled by a traffic signal or a "stop" sign or line. Instead, the court instructed the jury as a matter of law that "this entire intersection is one intersection," and, by reading the provisions of § 233 (a) with respect to a vehicle entering a through highway, thereby in effect advised the

---

2. All references herein to sections of the Code are, unless otherwise stated, to the Code of 1957 and Article 66½.

jury that the east-facing stop sign at the northeast corner of the Oliver-Central intersection not only required the operator of the taxicab to stop at the entrance to Central Avenue and yield the right of way to other vehicles approaching thereon, but also made it imperative for the taxicab operator to stop at the entrance to Harford Avenue and yield the right of way to all the traffic he found at that intersection regardless of who had the right of way. In addition to this, the trial court, at the hearing on the motion for a judgment n.o.v. and (in the alternative) for a new trial, refused to hear testimony or examine records with respect to alleged newly discovered evidence relating to a subsequent injury the plaintiff had sustained. The questions raised on this appeal are based on the adverse rulings as to the evidence, the motion for a directed verdict and the instructions to the jury.

We think the judgment must be reversed. As we see it, the law in Maryland is such as to require a reversal and a remand for a new trial primarily because the lower court erred when, in instructing the jury, it misstated the law applicable to the facts.

In the first place, although § 2 (a) (58) defines "highway" as including "any highway or thoroughfare of *any kind* [italics supplied] used by the public," it is not likely that the definition was ever intended to include a two-way street that, in intersecting two other two-way streets (approximately sixty-one feet apart), had one intersection on the north side of the roadway for traffic going west, and two intersections on the south side of the roadway for traffic going east. Moreover, it should be noted that the term "intersection" is defined in § 2 (a) (20) as "[t]he area embraced within the prolongation or connection of the lateral curb lines, or, if none, the lateral boundary lines of the roadways of *two* [italics supplied] highways which join one another at, or approximately at, right angles * * *." And while we ruled as a matter of law in *Packer v. Hampden Trans. Etc., Co.,* 206 Md. 407, 111 A. 2d 849 (1955), involving an intersection where one of the intersecting streets was a divided highway (separated by a grass plot), that there was only one intersection and reversed the lower court because it had erroneously instructed the jury that there were two intersections,

the situation here is quite different. For here we are concerned not with *two* but *three* streets, all of which are two-way, and two of which—and this is the real distinction between the *Packer* case and this case—are separated by a sixty-one foot portion of the intersecting street.

Other than these statutory definitions, there are other provisions in the motor vehicle laws that have an important bearing on the problem presented by this case. The authority that Baltimore City and other local authorities have to designate through highways within their municipal limits and erect stop signs at the entrances thereto is conferred by § 242 (a).[3] Subsection (b) of § 242 requires that every stop sign "shall be located as near as practical" to the entrance at which a full stop must be made. Moreover, subsection (c) of § 242 permits the use of a stop line at an intersection instead of a stop sign provided such line is clearly marked on the surface of the street or highway.

Section 189 requires the State Roads Commission to adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of the motor vehicle laws for use on all highways throughout the state. And § 191 not only requires local authorities to place and maintain such traffic-control devices on the streets and highways under their jurisdiction as may be necessary to indicate and carry out the motor vehicle laws and local traffic ordinances and to *regulate, warn* and *guide* traffic, but also specifically requires that all such traffic-control devices shall be erected in conformity with the State manual and specifications. It is for this reason that the lower court, if for no other reason, should have admitted the sign manual and specifications into evidence or taken judicial notice thereof, for the purpose of informing itself that under such specifications a stop sign had to be erected not closer than six nor more than fifty feet from the northeast corner of the Oliver-Harford intersection.

---

3. For the power the city (or other local authority) has—after posting appropriate signs for the regulation of traffic therein—to designate *any* intersection (in addition to throughway intersections) as a stop intersection requiring all vehicles to stop at one or more entrances thereto, see § 185 (a) (6) and (b).

We think it is obvious that the stop sign at the northeast corner of the Oliver-Central intersection was too far away (approximately one hundred and two feet) to also control the entrance of the taxicab into the Oliver-Harford intersection. And, in the absence of a stop sign or a clearly marked stop line at or as near to the northeast corner of the Oliver-Harford intersection as was practical, it is equally apparent that the intersection was not a stop intersection within the meaning of the boulevard law. *Houlihan v. McCall,* 197 Md. 130, 78 A. 2d 661 (1951). See also *Nardone v. Underwood,* 219 Md. 326, 149 A. 2d 13 (1959), where, in the absence of a stop sign or a signaling device at an intersection on a dual highway, we applied the statutory right of way law in holding that the lower court was in error when, on a motion for a directed verdict, it ruled the plaintiffs were guilty of negligence directly contributing to the accident.

In a situation such as this, where the intersection is not a controlled intersection (even though the intersecting street crosses a street or avenue that had been designated as a through highway), it is provided by § 231 (a) that a vehicle shall give the right of way to a vehicle approaching from the right and shall have the right of way over a vehicle approaching from the left. But this does not mean that a vehicle has an absolute right of way merely because it is approaching from the right. *Legum v. Hough,* 192 Md. 1, 63 A. 2d 316 (1949); *Wlodkowski v. Yerkaitis,* 190 Md. 128, 57 A. 2d 792 (1948). Nor has this statutory rule completely nullified the common law rule that a negligence-free operator, who arrived at the intersection first, was entitled to the right of way. *Rabinovitz v. Kilner,* 206 Md. 455, 112 A. 2d 483 (1955). The right of way statute affords only a relative right and the question of whether a vehicle approaching from the right is close enough to the intersection to have the right of way over a vehicle approaching from the left generally depends upon the circumstances in each particular case. *Legum v. Hough* and *Wlodkowski v. Yerkaitis,* both *supra.* The question is usually one for the jury to decide.

We think it is too clear to need further comment that this case is one which requires application of the law applicable

to an uncontrolled intersection instead of the law applicable to a controlled intersection, and we so hold.

When the case is retried, the trial court will, of course, instruct the jury as to the law applicable to vehicles approaching or entering an uncontrolled intersection in such manner as will, under the evidence in the case when it is retried, clearly define the respective and relative rights of the parties to the end that the jury may decide which vehicle was entitled to the right of way.

As to the other questions raised on the appeal, not already decided or mentioned, we may add that it was improper for the trial court to exclude evidence proffered to show that there was no east-facing stop sign at the intersection of Oliver Street with Harford Avenue *before* the accident, but it was not improper to refuse to admit evidence to show that a stop sign had been erected at this point *after* the accident. Nor was it improper for the court to deny the motion of the defendants for a directed verdict against the plaintiff on the theory that she was guilty of contributory negligence as a matter of law. And, since the case is to be retried, the question as to whether the court abused its discretion in refusing the motion for a new trial need not be decided.

The judgment will be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial; the appellees to pay the costs.*

MARBURY, J., dissents.