PERLIN PACKING COMPANY, INC., ET AL.
*v.* PRICE, ET AL.

[No. 499, September Term, 1966.]

476

*Decided July 18, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and FINAN, JJ.

*George H. White,* with whom were *W. Edgar Porter* and *Porter, Cullen & Clark* on the brief, for appellants Perlin Packing Co., Inc. and Williams.

*John W. T. Webb,* with whom were *D. William Simpson* and *Webb & Burnett* on the brief, for appellants King.

*Patrick L. Rogan, Jr.,* with whom was *Vaughn E. Richardson* on the brief, for appellee Chandler.

*Morton J. Owrutsky,* with whom was *Herman E. Perdue* on the brief, for appellees Price, Wallace, and Stewart.

FINAN, J., delivered the opinion of the Court.

This appeal from the Circuit Court for Wicomico County, sitting with a jury, involves twelve consolidated cases, all arising from an intersection collision between a school bus and a tractor trailer. Eleven cases arise from personal injuries to infant passengers and one case is for property damages to the tractor trailer and its contents.

The actions were severed as to the questions of liability and damages and issues were presented to the jury. The jury found the defendants (now appellants, who are the operators and owners of the two vehicles involved) negligent and rendered verdicts in favor of the plaintiffs (appellees) in the actions growing out of the injuries to the infant passengers and against the tractor-trailer owner in the property damage claim.

The accident occurred at about 8:00 a.m. on November 5, 1964, in Fruitland, Maryland, just south of Salisbury, at the intersection of U. S. Route 13 and Main Street. At the scene of the accident, U. S. Route 13 is a dual highway running in a general north-south direction, with two lanes for northbound traffic and two lanes for southbound traffic. There are also two turning lanes at the intersection where the accident occurred, one on the inside or easterly side of the southbound lanes of U. S. Route 13 to be used by vehicles turning left off U. S. Route 13 to go east on Main Street, and the other on the inside or westerly side of the northbound lanes of U. S. Route

478

13 to be used by vehicles turning left off U. S. Route 13 to go west on Main Street. U. S. Route 13 is separated by a median strip approximately 37 feet in width. Main Street is a two-lane blacktop highway running in a general east-west direction. The distance from the west side of the southbound roadway of U. S. Route 13 at Main Street to the east side of the northbound roadway of U. S. Route 13 at Main Street is 120 feet.

Traffic at the intersection of U. S. Route 13 and Main Street is controlled by automatic traffic signals. There is one traffic light suspended over the northbound lanes of U. S. Route 13 at its intersection with Main Street and one traffic light suspended over the southbound lanes of U. S. Route 13 at its intersection with Main Street. These lights are synchronized and work in unison. The distance between the two lights is 82 feet. The traffic signals were set at the time of the accident so that they would show green for traffic proceeding on U. S. Route 13 for a period of forty seconds, then change to amber for a period of six seconds and then change to red for a period of 36 seconds. When the traffic signals show green and amber for traffic on U. S. Route 13, they show a red light for traffic on Main Street and when the traffic signals show green and amber for traffic on Main Street, they show a red light for traffic on U. S. Route 13. The posted speed limit for traffic traveling on U. S. Route 13 was 35 miles per hour, and the posted speed limit for traffic traveling on Main Street was 30 miles per hour. There were no "yield" or "stop" signs in the median strip requiring a vehicle crossing U. S. Route 13 in either direction on Main Street to yield the right-of-way to a vehicle in the far lane.

Although there were three vehicles involved in this accident, we are only concerned with two. One was a school bus driven by defendant Barbara Ann King and owned by defendant Douglas J. King. This bus was on its regular route with more than thirty children on board whom Mrs. King had picked up on this particular morning and whom she was taking to a school which was about a mile to the east of the scene of the accident. The several plaintiffs in this case were either passengers in the bus or their parents. The bus was a typical International school bus about 34 feet in length. The bus had traveled almost com-

pletely through the intersection, going east on Main Street, at the time of the accident.

The second vehicle was a 15-ton tractor trailer driven by defendant Bernard Williams and owned by defendant Perlin Packing Company. The truck was loaded with eleven tons of "swinging" beef (whole beefs hanging from overhead hooks). It was headed north on U. S. Route 13 traveling from Norfolk to the metropolitan markets. A third vehicle, a pickup truck operated by Richard Monroe Pote, was in the process of turning north on U. S. Route 13 from a westbound course on Main Street, and was involved as a by-product of the major collision. Pote being a witness, not a litigant.

On the morning of the accident, the weather was extremely foggy. Trooper William E. Mitchell, the Maryland State Trooper who investigated the accident, testified that he drove about 8 miles to the scene immediately after the accident occurred and that when he drove 40 miles per hour he was driving over his visibility.

The bus operator, Barbara King, had left home slightly early on this morning because of the extreme fog. She picked up the school children on her route as usual. Mrs. King testified that she did not know how fast she was traveling as she approached the intersection, but that she was going slowly. Jerry Price, a student who was riding in the bus and a plaintiff below, testified in his deposition, which was admitted in evidence, that Mrs. King was traveling about 35 miles per hour as she approached the intersection and slowed down to about 15 miles per hour as she went through the intersection. Other witnesses estimated the speed of the bus to be 20 miles per hour as it traversed the intersection.

The defendant Bernard Williams was operating the tractor trailer in a northerly direction on U. S. Route 13 at a speed of about 35 miles per hour. Nora Jones, who observed the tractor trailer just prior to the accident, estimated its speed to be 35 to 40 miles per hour.

According to the testimony of defendant Barbara King, as she approached the intersection, she saw that the light was green for traffic on Main Street, and, therefore, went through the intersection. She had completely crossed the southbound

lanes of U. S. Route 13 and the area constituting the median strip when the right side of her bus was struck by the Williams' tractor trailer.

There was no conflict about the point of impact. The bus was struck at a point slightly to the rear of its center by the front of the Williams' vehicle. The impact was at the point where the eastbound lane of Main Street crossed the right-hand (slow) lane of the northbound lanes of U. S. Route 13. The tractor trailer left skid marks of 21 feet and 29 feet in that lane leading up to the point of impact. On impact the bus pivoted around on its front end and was driven backward into Pote's truck, which was just entering the turnoff lane to turn north on U. S. Route 13. When the vehicles came to rest the bus was completely off U. S. Route 13 on the east side, blocking the westbound lanes of Main Street, and facing south. The Williams' tractor trailer was more or less parallel to it, still headed north, and was to the west of the bus in the slow (east) lane of U. S. Route 13.

Defendant Williams testified that he first saw the traffic light and the school bus when he was about 50 feet from the intersection. At that point, according to Williams' testimony, the light was "caution" for traffic on U. S. Route 13 (ergo, red for traffic on Main Street). He applied his brakes, but was unable to stop in time to avoid the collision.

Numerous witnesses testified as to the color of the traffic signal at the intersection at various points of time with relation to the accident. Defendant King testified that when the bus entered the intersection, the light was green for vehicles traveling on Main Street and three school children passengers on her bus testified that the light was green for the bus as it approached or entered the intersection. A pedestrian testified that she was standing at the intersection as the school bus approached and that the traffic light was green for the bus as it entered the intersection.

Just before the accident occurred, John Price and Howard Girley had stopped their respective vehicles for a red light in the southbound lanes of U. S. Route 13. Girley testified that, at the time the accident occurred, the light was still red for traffic on Route 13, and Price testified that the light had just

turned green for traffic on Route 13 and he had just started south when he heard the crash.

Nora Jones and Orville Johnson were both in a filling station at the southwest corner of the intersection when the accident occurred. Neither of these witnesses observed the traffic signal before the accident, but both heard the crash and then looked up at the light; they testified that the light was green for traffic on Route 13.

Richard Pote was operating his pickup truck in a westerly direction on Main Street just prior to the accident. As he crossed the railroad tracks, about 250 feet easterly from the intersection, he glanced up and saw a red light for traffic on Main Street. After that he never looked back at the light. Whatever color the light would have been for him going westerly on Main Street, it would have been the same for the school bus coming easterly.

Defendant King never saw the Williams' tractor trailer before the collision. She testified that as she was going across the median strip of the intersection, she glanced up at the light over the northbound lanes and it was still green for her. She further testified that she was following a pickup truck into Main Street and was watching this truck as she went on across the northbound lanes; she did not look to the south before crossing the northbound lanes. The only person in the bus who saw the tractor trailer before the accident was Alice Ruth Wallace, a fifteen-year old riding in the front seat. Alice was not clear where the bus was when she saw the tractor trailer, but she glanced at it, looked away, and then the accident occurred. She testified that the light was green for the defendant King as the bus crossed the southbound lanes and she did not notice the light over the northbound lanes.

At the conclusion of the testimony the plaintiffs and defendants all moved for directed verdicts in their respective behalfs. Defendant Barbara King and defendant Williams each claimed the benefit of the boulevard rule as the favored driver and that, as such, they were free of any primary negligence and that the negligence of the other was the sole proximate cause of the accident.

All motions for directed verdicts were overruled—the trial

judge allowing the case to go to the jury. In his instructions. to the jury, the trial judge informed them that for the purposes. of their deliberation they were to consider the intersection at Main Street and U. S. Route 13 to be one intersection and not two. This was directly contrary to the theory of the case urged by defendants Williams and Perlin.

Verdicts were brought in against all defendants in the various. passenger claims and a verdict was rendered in favor of the defendants King in the property damage suit of the Perlin Packing Company. Appeals were taken from these rulings by all the defendants as well as from alleged errors in the court's instructions to the jury.

## THE KING APPEAL

We will first consider the grounds for appeal urged by the appellants King. The main thrust of the King appeal is predicated on the proposition that when Mrs. King, operating the bus on Main Street, entered the intersection she did so on a green light and that although this particular intersection is controlled by two separate but synchronized traffic lights, one suspended over each section of dual highway U. S. Route 13, it should be considered as one intersection and applying the boulevard rule, once she had entered the intersection on the green light, she had the right-of-way through the entire intersection even though the lights may have changed as she proceeded through the intersection. As a corollary to this, the Kings contend that appellant Williams, operating the tractor trailer on U. S. Route 13, was duty bound to yield the right-of-way and that such failure to yield was the sole proximate cause of the accident—there being no primary negligence on the part of Mrs. King.

Reliance is placed in *Packer v. Hampden Trans. Etc. Co.*, 206 Md. 407, 111 A. 2d 849 (1955), a case presenting a similar type double-light intersection where Cold Spring Lane traverses Roland Avenue in the City of Baltimore. In *Packer* this Court held that it was the legislative intent that such an intersection, when viewed in the light of the definitions of "Intersection," Art. 66½, § 2(20), Code (1951) (now Art. 66½, § 2(a) (20), Code (1957)), and "Roadway," Art. 66½, § 2(46), Code (1951) (now Art. 66½, § 2(a)(47), Code (1957)), be con-

strued as a single intersection and not as two intersections. This Court agrees that the ruling of *Packer* is apposite to the instant case and we find nothing in the facts of this case or in this Court's opinion in *Belle Isle Cab v. Trammell,* 227 Md. 438, 177 A. 2d 404 (1962), a case involving three streets and readily distinguishable, which would remove this case from under the *Packer* construction.

However, we cannot agree with appellants King when they gratuitously assume that there was no evidence in this case that Mrs. King entered the intersection on something other than a green light.

There is no question but that there was substantial evidence showing Mrs. King entering the intersection with a green light in her favor. However, there was legally sufficient evidence in the testimony, giving rise to reasonable inferences, from which the jury might fairly have deduced that Mrs. King did not have a green light when she entered the intersection. The trial court must be concerned with the legal sufficiency of the evidence, rather than the weight of the evidence, and as long as there is such evidence the jury must pass upon it. As was said by this Court seventeen years ago in *Valench v. Belle Isle Cab Co.,* 196 Md. 118, 75 A. 2d 97 (1950) at p. 122:

> "We have said so often that it has become trite, that if there is any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence will be left to the jury."

*Fowler v. Smith,* 240 Md. 240, 246, 213 A. 2d 549, 544 (1965) and *Ford v. Bradford,* 213 Md. 534, 541, 132 A. 2d 488, 492 (1957).

The testimony of Pote, who was driving his pickup truck westerly on Main Street while Mrs. King was approaching easterly on Main Street, is to the effect that some two hundred and fifty feet from the intersection he looked up and saw the light to be red. The appellants King endeavor to rationalize this statement, and while so doing minimize the importance of his testimony, by contending that Pote observed the light as red immediately prior to its going through its green-amber cycle, and that it went through that cycle between the time Pote observed

the light and the instant of the impact. The green-amber cycle would have required 36 seconds for Main Street traffic. Pote testified that he was traveling at about 10 to 15 miles per hour when he observed the red light about 250 feet from the intersection. At the speed of 10 miles per hour he would have covered the distance between his point of observation of the red light and the turn off at the intersection in approximately 17 plus seconds, which would have had him stopped at the turn off at the intersection approximately 19 seconds before the impact, which is contrary to his testimony. On the other hand, Pote could have observed the traffic signal during its red interval and have traveled this 250 feet between where he first observed it and his turn off at the intersection during any 17 seconds of the 30-second-red interval. This latter construction would weaken, if not destroy, Mrs. King's contention that the light on Main Street was green when she entered the intersection. Yet, Pote's testimony is susceptible to this interpretation and hence gives rise to inferences of negligence on Mrs. King's part which were properly referable to the jury for its consideration. As to whether Pote's version of his observation of the color phase of the traffic signal and the inferences fairly deducible therefrom or the testimony of the youthful passengers on the bus and of other witnesses, as to the color phase of the traffic signal at the time of their observations, should prevail were matters of fact for the jury to decide.

Nor can we discount the testimony of the defendant Williams to the effect that as his tractor trailer approached the intersection the traffic light was amber for traffic on U.S. Route 13, which meant that at that time it was red for traffic on Main Street. This would be corroborative of the inferences which may be drawn from Pote's testimony. Again, this was evidence for the jury to consider.

In view of the variance of the testimony of the witnesses, it would have been error for the lower court to have directed a verdict in favor of the appellants King.

Appellants King also complain that the lower court erred in giving inadequate and ambiguous instructions to the jury concerning the relative rights and duties of the operators of vehicles at intersections controlled by automatic traffic signals and

that, in the absence of negligence on the part of Mrs. King, the jury should not have been allowed to speculate that the speed of the school bus or Mrs. King's failure to see the tractor trailer prior to the impact was a proximate cause of the accident. Likewise, if the jury found that the light turned from green to amber as she entered the intersection, the jury should then have been instructed that she had the right to proceed with caution through the intersection. Art. 66½ § 193 (b) (1), Code (1957).

Although the trial judge in his instructions to the jury might well have been more explicit on certain nuances of the boulevard rule, we think that it was adequate and without error. In *Aleshire v. State,* 225 Md. 355, 370, 170 A. 2d 758, 765 (1961) this Court said:

> "Requested written instructions, even though they be correct expositions of the law, need not be granted, provided 'the matter is fairly covered by instructions actually given; * * *.' Maryland Rule 554 b 1."

The trial judge incorporated in his instructions the language of § 209 (a) of Art. 66½, Code (1957) (Motor Vehicle Law) together with his own pertinent comments as follows:

> "Now at the time of this collision there was in effect in Maryland the following law which is codified as Section 209(a) of Article 66½ of the Annotated Code of Maryland. 'No person shall operate a vehicle, streetcar or trackless trolley, as defined in this article, over any public highway of the state recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of any person or without due regard to wear upon the said highway so as not to damage, unnecessarily or unreasonably the same.' "

The court in its instructions also quoted § 193 of Article 66½ relating to traffic-control signal legend as follows:

> "* * * 'Whenever traffic is controlled by traffic-control signals exhibiting the words 'go,' 'caution,' or 'stop,'

or exhibiting different colored lights successively one at a time the following colors only shall be used and the said terms and lights shall indicate as follows: (a) Green alone or 'go.' (1) Vehicles facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right of way to other vehicles and pedestrians lawfully in the intersection at the time such signal is exhibited. (b) Amber alone or 'caution' when shown following the green or 'go' signal. (1) 'Vehicles facing the signal shall stop before entering the nearest crosswalk at the intersection but if such stop cannot be made in safety a vehicle may be driven cautiously through the intersection. And, of course, (c) relates to the red alone. 'Vehicles facing the signal shall stop before entering the nearest crosswalk at an intersection or such other point as may be indicated by a clearly visible line and shall remain standing until the green or 'go' is shown alone.' "

After quoting §§ 209 (a) and 193 of Art. 66½, the trial judge gave this instruction:

"Now, if you find that the collision of the vehicles was caused or directly contributed to by a violation of the Motor Vehicle Law I have just read to you by Barbara A. King, then your verdict must be for the plaintiffs against the defendants Barbara A. King and Douglas King. And if you find that the collision of the vehicles was caused or directly contributed to by violation of the Motor Vehicle Law which I have just read to you by Bernard Williams, then your verdict must be for the plaintiffs against the defendants Perlin Packing Company and Bernard Williams."

The lower court also gave the following instruction concerning the right-of-way of one who has lawfully entered an intersection:

"Now under the law of Maryland a driver who has lawfully entered an intersection with a favorable traffic

light has the right to continue across and complete the passage of the intersection even though the light changes in the middle of the passage and even though a vehicle on an intersecting road may have the green light after such change."

From these instructions there is no question but that the jury was told that if Mrs. King entered the intersection with a favorable light she had a continuing right-of-way across the intersection.

We do not think that the lower court's inclusion in its instructions to the jury of the general language of the Statute, Art. 66½, § 209(a), to the effect that no person shall operate a vehicle over any public highway "recklessly or at a speed greater than is reasonable or proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of any person" was prejudicial to the appellants King. By all accounts at the time of the accident it was extremely foggy, the visibility was poor and both drivers involved were operating vehicles of considerable weight, length and width.

We are of the opinion that the appellants King cannot complain of any prejudicial error in the lower court's instructions to the jury.

THE WILLIAMS AND PERLIN APPEAL

We shall next consider the question of the liability of the operator and owner of the tractor trailer, appellants Williams and the Perlin Packing Co., Inc. (Perlin).

The main premise upon which appellants Williams and Perlin base their appeal is that the intersection of Main Street and U. S. Route 13 is not a single intersection but two intersections and that being the case, the jury should have been instructed that if they believed that when Mrs. King reached the second intersection, that is Main Street with the northbound lanes of U. S. Route 13, she had a red light, then Williams had the right-of-way as a matter of law. Counsel for Williams and Perlin ably argued this point; however, to adopt their thesis we would have to depart from the holding of this Court in *Packer v. Hampden Trans. Etc. Co., supra.* The appellants Wil-

liams and Perlin take sustenance in the dictum found in a case of more recent vintage, *Belle Isle Cb. v. Trammell, supra,* wherein they contend that this Court re-examined the *Packer* decision and postulated that the real test as to whether one or two intersections exist, is the distance separating the two thoroughfares. However, a close reading of *Belle Isle* reveals obvious distinctions other than the distance separating the streets. The streets in question in *Belle Isle* were Harford Avenue, Central Avenue and Oliver Street in Baltimore City. All three streets were two-way streets but none were dual lane with median strips. Harford Avenue and Central Avenue run convergently for some distance, finally crossing Oliver Street and merging into one street, a short distance north of Oliver Street. There were no mechanical traffic signals at the intersections, just stop signs. The three streets were not marked or separated in any manner to indicate where one street ended and the other began. Although Central and Harford Avenues had been designated by ordinances as throughways, there was nothing to so indicate. Accordingly, the Court was dealing with three two-way streets. In the instant case you have two two-way thoroughfares controlled by traffic signals, each synchronized with the other; the distinction between the two cases, as we have indicated, rested on other factors than the distance between the streets.

This Court, failing to subscribe to appellants Williams' and Perlin's theory that this case presents two intersections instead of one will next look at Williams' testimony.

He testified that he was driving the tractor trailer weighing about 31,000 pounds, carrying approximately 22,000 pounds of beef, at about 45 miles per hour. The weather was foggy and he was driving through patches of fog, but as he got to the city limits of Salisbury the fog persisted; he had also eased up on the accelerator when suddenly the fog lifted and about 50 feet in front of him he saw both the traffic light, which was then amber or "caution," and the school bus in the northbound lane. He hit his brakes, which were air brakes, and the tandem wheels started "jumping up and down" and he plowed into the middle of the school bus. He testified that it all happened very quickly. He fell out of the truck after it stopped and was injured.

Mrs. King testified that she talked with Williams while they were both being driven to the hospital by a state trooper and that, at that time, Williams said it was so foggy that he had not seen any traffic light.

It is obvious that where, as we have just recited, the testimony reveals a dispute over so many material facts that the lower court was correct in refusing to grant appellants Williams' and Perlin's motion for a directed verdict.

The appellants Williams and Perlin also contend that it was error for the lower court not to instruct the jury on the theory of unavoidable accident under the facts of the case as requested by them. We think it would have been error for the court to have granted such an instruction. The facts present an accident which occurred at an intersection controlled by automatic traffic signals which were in working order. It is inconceivable that the accident was not due to the negligence of one or both of the parties operating the vehicles involved. The presence of fog merely placed a greater burden of diligence on the operators of both vehicles. See *York Motor Express Co. v. State,* 195 Md. 525, 533, 74 A. 2d 12, 15 (1950).

As additional grounds for appeal they have objected to the court's striking the testimony of Lorenza Price, an eight-year-old passenger on the bus. A reading of the responses of this youthful witness to the questions of counsel fully demonstrates that, as was stated by the court, she either did not understand the questions as asked or did not know what she was saying when she attempted to answer them. The lower court exercised sound discretion in striking out her testimony. *Robert v. State,* 220 Md. 159, 165, 151 A. 2d 737, 739 (1959). We should also add that her testimony was of no probative value and it is not discernible that the appellants were prejudiced by its being stricken. *Maryland Chemical v. Monn,* 241 Md. 127, 215 A. 2d 731 (1966).

The appellants likewise objected to the admission in evidence, over the objection of their counsel, of the deposition of Jerry Price, a nineteen-year old passenger on the bus, who at the time of the trial was in the military service in the State of California. There was testimony to the effect that his father had written him about the trial but that he could not attend although the

month prior thereto he had been home on leave. His deposition had been taken at the request of the appellant Perlin. We think that this situation is controlled by Rule 413, titled "Use of Deposition," which provides:

"a. When May Be Used.

At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used in accordance with any one of the following provisions:

* * *

"3. Witnesses Not Available — Exceptional Circumstances.

The deposition of a witness, whether or not a party, may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition or who had due notice thereof, if the court finds:

* * *

"(2) that the witness is out of the State, unless it appears that the absence of the witness was procured by the party offering the deposition; * * *."

There was no evidence that the absence from the state of the witness Jerry Price was procured by any connivance on the plaintiffs' part and we think the trial judge properly allowed its admission in evidence.

The appellants also contended that the lower court abused its discretion in refusing to grant a new trial on the grounds that:

(a) The amounts of the verdicts were excessive;

(b) because of newly discovered evidence pertaining to the correctibility of the eye injury sustained by plaintiff Chandler;

(c) because of the later discovery of a vision impairment of one juror who allegedly related to the jury, during their deliberations, his own experience with a similar eye injury as that complained of by one of the plaintiffs, and performed some form of a demonstration for them in the jury room;

(d) because of possible influence on the jury of newspaper articles published during the trial.

The rule that the granting or denying of a motion for a new trial rests with the sound discretion of the trial court is so well established as not to require elaboration.

The question as to whether damages awarded are excessive is a matter resting in the sound discretion of the trial judge As was said by Judge Hammond (now Chief Judge), speaking for the Court in *Safeway Trails, Inc. v. Smith, supra,* at p. 223: "It was for the trial judge to determine whether the verdict shocked his conscience. He determined it did not." In the instant case we do not believe that the lower court's refusal to grant a new trial because of alleged excessive damages was an abuse of its sound discretion.

Likewise, the question of the misconduct of a juror is also within the sound discretion of the court, *Safeway Trails, Inc. v. Smith, supra,* at pp. 216-18, *Rent-A-Car Co. v. Fire Ins. Co.,* 163 Md. 401, 408-09, 163 A. 702, 705 (1933).

The question of the existence of newly discovered evidence was likewise a matter to be left to the sound discretion of the trial judge who had heard all of the testimony and was thoroughly familiar with the issues involved. There was no manifest error or abuse of discretion which would warrant this Court in disturbing the action of the lower court. The contentions relative to the possible influence on the jury of improper articles published during the trial, we regard as frivolous.

For the reasons set forth herein, we are of the opinion that the judgments entered in the lower court should be affirmed.

*Judgments affirmed, appellants to pay the costs.*