GLOVER *v.* SAUNDERS

[No. 1, September Term, 1968.]

*Decided January 14, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Earl H. Davis* for appellant.

*William Clague,* with whom was *Francis C. O'Brien* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Who had the green light is the firmament-shattering question presented by this appeal. The trial judge, Meloy, J., considered it to be clearly within the province of the jury. We agree.

Just after lunch on 29 September 1965, a clear, dry day, the appellant (Mrs. Glover), a 33 year old widow, was motoring north on New Hampshire Avenue in Prince George's County in an automobile borrowed from a friend. She had been licensed to operate a motor vehicle only the day before. Alone in the car she approached the intersection of New Hampshire Avenue and the principal exit from a large shopping center on the east side of New Hampshire Avenue. At the time traffic at this point was controlled by electric traffic signals. There was also a stop sign facing vehicles coming out of the shopping center into New Hampshire Avenue. The light was red for her, she said, so she stopped at the intersection. She saw the appellee's station wagon standing still but about to enter New Hampshire Avenue from the shopping center. She "wondered" why the appellee (Mrs. Saunders) did not move out into the intersection. When her light changed from red to green Mrs. Glover started forward and immediately thereafter collided with Mrs. Saunders who entered the intersection at about the same time.

Mrs. Saunders, whose driving experience spanned 43 years, testified that she and Marie Farrar, a friend, had been shopping together and were about to start for home. As she approached New Hampshire Avenue she saw the traffic signal but "it was blank." Nevertheless she stopped at the light and when the green light came on she entered the intersection intending to make a left turn. After the accident Officer Steven M. Igoe of the Prince George's County Police Department happened by. He initiated the usual investigative procedures. He testified that Mrs. Glover told him she had a green light but that Mrs. Saunders insisted it was she who had the green light. He said the red light in the signal facing Mrs. Saunders was out of order but that the amber and green lights were working properly. Mrs. Saunders' testimony was corroborated by Mrs. Farrar.

At the conclusion of the evidence Judge Meloy gave the jury the instructions customarily given in this kind of case and, in addition, he instructed them that New Hampshire Avenue, at this point, is a boulevard, that Mrs. Glover's right to assume she had the right of way was an important factor and that ordinarily she would not have been required to "anticipate that a

vehicle * * * [might] cross in the path of oncoming traffic on the boulevard." He also instructed them that her failure to "observe a malfunctioning traffic signal" was not evidence of negligence. He made no mention of contributory negligence nor was he asked to do so. Short of a directed verdict it was, all things considered, about as favorable an instruction as Mrs. Glover could have asked for. Oddly enough, it does not appear from the record that she requested any instructions.

The record shows that at the conclusion of the court's instructions the following occurred:

> "THE COURT: Are there any objections or any omissions of any of the instructions as given?
>
> "MR. DAVIS: On behalf of the plaintiff I have no objections or exceptions, Your Honor.
>
> "MR. O'BRIEN [counsel for Mrs. Saunders]: I would like on the boulevard, but I shan't. It sounds so strong.
>
> "THE COURT: Then you don't have any?
>
> "MR. O'BRIEN: Of course not.
>
> "THE COURT: I am home free."

One hour later the jury returned with a verdict in favor of Mrs. Saunders.

Mrs. Glover, within the time allowed, moved for a judgment n.o.v. and, alternatively, for a new trial. Of the 9 reasons cited in support thereof only No. 4 is now significant. It is as follows:

> "(4) The trial court erred in not granting plaintiff's motion for directed verdict as to liability herein, based upon the Maryland 'boulevard law'."

In this Court Mrs. Glover contends Judge Meloy erred when he denied her motion for judgment n.o.v.

Maryland Rule 563 a 1 provides as follows:

> "Rule 563.  Judgment N. O. V.
>
> "a.  *Motion.*
>
> "1. When to be Filed—3 Days.
>
> "*Where a motion for a directed verdict made by a party at the close of all the evidence is denied* then (1)

within three days after the reception of a verdict, such party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict, or (2) if a verdict was not returned, such party, within three days after the jury has been discharged, may move for a judgment in accordance with his motion for a directed verdict." (Emphasis added.)

We have examined the transcript very carefully but we have not found anything suggesting a motion, by either party, for a directed verdict or the denial of any such motion. Perhaps some such motion may have been made and denied in chambers or in a colloquy at the bench. If so the transaction certainly was not inserted into the record. A motion for a judgment n.o.v. cannot be considered, much less acted upon, unless the record discloses the denial of a motion for a directed verdict "made at the close of all the evidence."

In *Rockville Investment Corp. v. Rogan,* 246 Md. 482, 484-85, 229 A. 2d 76 (1967), Judge Marbury said, for the Court:

"There is nothing before this Court to review. After making its motion for a directed verdict at the close of appellees' case, which motion was denied, appellant offered evidence to support its theory of the case and to rebut the evidence presented by appellees. The motion for directed verdict was withdrawn by the appellant's presentation of evidence. Maryland Rule 552 b. *Schmidt v. Millhauser,* 212 Md. 585, 130 A. 2d 572; *Smith v. Carr,* 189 Md. 338, 56 A. 2d 151. At the close of all the evidence appellant made a motion for a directed verdict without stating the grounds therefor, as he had done previously for the motion made at the close of the evidence offered by appellees. The record indicates that there was argument on this motion, but it does not reveal any portion of that argument nor the grounds for this motion. A party has the obligation to state for the record the grounds of his motion for a directed verdict in order to inform the court and the counsel for the non-moving party. Rule 552 a;

*Levin v. Cook,* 186 Md. 535, 47 A. 2d 505; *Slaska v. Idzi,* 186 Md. 530, 47 A. 2d 503, and cases cited therein. The second motion was defective, and having failed to properly renew the first motion and the reasons therefor, appellant can not now rely upon either on appeal. Appellant also failed to object to any instructions given the jury. Since appellant offered evidence after making its motion for a directed verdict at the close of appellees' testimony, but failed to properly renew the motion at the close of all the evidence or to object to instructions with reference to the issues raised in the trial, the rulings on the motions and the instructions to the jury became the law of the case and the questions raised by the appellant are not properly before this Court for decision. *Montauk Corp. v. Seeds,* 215 Md. 491, 138 A. 2d 907; *Smith v. Carr, supra.*"

While for what has been said Mrs. Glover's appeal must fail, that would have been its eventual fate in any event. We understand her to be arguing that since the presence of the stop sign made New Hampshire Avenue a boulevard the green light conferred upon Mrs. Saunders nothing more than the right to enter New Hampshire Avenue as an unfavored driver. Despite the many cases cited by Mrs. Glover, we are not persuaded by this argument. We think Mrs. Saunders' right to enter the intersection was controlled by Code, Art. 66½ § 242 (c) which reads as follows:

> "*Duty of driver.*—Every driver of a vehicle shall come to a full stop at such [stop] sign or at a clearly marked stop line before entering an intersection and yield the right-of-way to vehicles approaching on the intersecting highway *except when directed to proceed by a peace officer or traffic-control signal.*" (Emphasis added.)

Mrs. Saunders' right to proceed, of course, was limited by Code, Art. 66½ § 193 (a) (1) which provides:

> "(a) *Green alone or 'go.'*
> "(1) Vehicles facing the signal may proceed straight

through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right-of-way to *other vehicles* and to pedestrians *lawfully within the intersection at the time such signal is exhibited."* (Emphasis added.)

*See Smack v. Whitt,* 249 Md. 532, 538, 240 A. 2d 612 (1968). Whether Mrs. Glover was "lawfully within the intersection" at the time the light turned green for Mrs. Saunders, or even at the instant of collision is, in the circumstances, clearly a question for the jury. *Perlin Packing Co. v. Price,* 247 Md. 475, 484, 231 A. 2d 702 (1967); *Eastern Contractors, Inc. v. State ex rel. Seifert,* 225 Md. 112, 169 A. 2d 430 (1961).

*Judgment affirmed.*
*Costs to be paid by the appellant.*