FRANK EDWARD HENSLEY *v.* DEBORAH S. RICH ET AL.

[No. 361, September Term, 1977.]

*Decided December 14, 1977.*

---

The cause was argued before MOYLAN, MOORE and LISS, JJ.

*I. Steven Seigel,* with whom were *Robert W. Fox* and *Steen, Hughes & Seigel* on the brief, for appellant.

*Richard R. Beauchemin,* with whom were *Arnold, Beauchemin & Huber, P.A.* on the brief, for appellees.

MOYLAN, J., delivered the opinion of the Court.

On July 10, 1972, at approximately 12:40 p.m., an automobile driven by the appellant, Frank Edward Hensley, struck and injured the nine-year-old appellee, Deborah S. Rich. She sustained a fractured leg. A jury in the Baltimore City Court found the appellant liable for negligence and rendered verdicts against him in favor of Deborah Rich and her parents, also appellees, in total amounts of $30,000. On this appeal, the appellant claims that two erroneous evidentiary rulings constituted reversible error:

(1) He claims that the trial judge erroneously excluded testimony as to an out-of-court declaration made by the infant appellee approximately one hour after the accident while she was being treated at the Union Memorial Hospital; and

(2) He claims that the trial judge erroneously excluded an expert opinion by the investigating officer as to the point of impact in this pedestrian-vehicular collision.

In view of our decision with respect to the first claim of error, it will be unnecessary to consider the second.

The accident occurred at the intersection of Coleman Avenue and Sinclair Lane in Baltimore City. Sinclair Lane runs north and south. The intersection is a "T" intersection, with Coleman Avenue extending westward from Sinclair

Lane. A stop sign controls traffic entering Sinclair Lane from Coleman Avenue. There is no traffic control device at the intersection for vehicles proceeding along Sinclair Lane.

The appellee was one of five girls walking eastbound on Coleman Avenue, preparatory to crossing Sinclair Lane and then proceeding north on Sinclair Lane on their journey to the Herring Run Swimming Pool. All five girls came initially to the northwest corner of the Sinclair Lane-Coleman Avenue intersection. One of them successfully crossed Sinclair Lane to its eastern side. She called to the appellee to follow and the appellee stepped into Sinclair Lane. At that moment, the appellant was proceeding southbound on Sinclair Lane and his vehicle struck the appellee. The accident occurred in broad daylight. The weather was clear. The conditions of both the pedestrian-appellee and the driver-appellant were apparently normal. There was no evidence of speeding on the appellant's part.

When Officer Charles Gallagher arrived at the accident scene, the appellee victim had already been removed to the Union Memorial Hospital. After making his appropriate investigation of the crime scene, including an interview of the appellant, Officer Gallagher proceeded to the Union Memorial Hospital, arriving there at approximately 1:40 p.m., one hour after the accident. According to his testimony, he there interviewed the infant appellee and obtained a certain amount of information from her about the accident. The plaintiff's testimony, including that of the nine-year-old appellee and her mother and father, was to the effect that no interview even took place. That dispute, however, is exclusively a jury question. The evidentiary question before the trial judge was, assuming that the appellee made certain statements to the policeman, were they admissible in evidence as exceptions to the rule against hearsay?

The declaration, if made, clearly had relevance to the case. The appellant's attorney made the following proffer with respect to the out-of-court declaration:

> "Before I close my case, I wish to proffer the testimony of the police officer had he been allowed

to answer the questions which had been objected to. . . . Furthermore, if he would have been allowed to testify as to the statement made by Deborah Rich in the hospital, he would have stated that when he walked into the hospital room she stated she was running across Sinclair Lane and was struck by a car. Then upon questioning of her, his questions were, did you look before you crossed. Her answer was yes, but did not see anything coming. Question: Was you crossing by parked cars? Answer: Yes, sir. Question: Was you crossing at the corner? Answer: No, sir, down a little from the corner. That would be all, your Honor. At this point, I would close my case."

The trial judge declined to receive the ostensible out-of-court declaration into evidence on the ground that the appellee-declarant was in a too nervous, upset and excitable condition. The exchange over admissibility went as follows:

"Q. Let me ask you this. Did there come a time when you went to Union Memorial Hospital?

A. Yes, sir.

Q. And did you see Deborah Rich at Union Memorial Hospital?

A. Yes, I did.

Q. What time did you see her?

A. I spoke to her at 1:40 P.M.

Q. How do you know that, Officer?

A. Because I wrote it on my statement, what time I talked to her.

Q. What else did you write there? What do you write at the time you are talking to a person?

A. I write her name, address, physical description, date of birth, and then where the accident occurred, when it happened, what hospital she was in, what day, what time, and then I question her with reference to the accident.

Q. When did you fill this form out?

A. While I am talking to her.

Q. Did you have an opportunity to speak with Deborah Rich?

A. Yes, sir.

Q. And do you know how long this conversation took?

A. Fifteen or twenty minutes.

Q. Who was present while you were talking to her, do you know?

A. Her mother, Frances.

Q. How about her father?

A. No, just her mother.

Q. Did you ask her any questions about this accident?

A. Yes, sir.

Q. What questions did you ask her?

(Mr. Beauchemin): Objection.

(The Court): You can give the question, but you can't go further than that at this point. Do you understand?

A. Yes, sir. I can give the question, but not the answer. I asked, did you look before you crossed the street? Was you crossing by parked cars? Was you crossing at the corner? Then she started crying and the nurse gave her a needle, and I asked no further questions.

Q. (By Mr. Seigel): Before you asked these questions, did she say anything to you without you asking any questions?

(Mr. Beauchemin): Objection.

(The Court): Sustained.

(Mr. Seigel): May we approach the bench?

(The Court): Surely.

(Counsel approached the bench and the following occurred out of the hearing of the jury.)

(Mr. Seigel): I certainly feel he can testify to what

she said when he first — or blurted out when he first saw her as an obvious exception to the res gestae or spontaneous statement. Furthermore, all the statements made are admissible as admissions against her interest under hearsay.

(The Court): Not while she is in the hospital in the state of, he said, crying and screaming.

(Mr. Beauchemin): This was actually an hour after the accident.

(The Court): He said he got there at 1:40.

(Mr. Beauchemin): The accident was 12:40.

(The Court): Yes.

(Mr. Seigel): Are you disagreeing with me; they are not admissions against interest?

(The Court): They may be, but not in the conditions that she was. I am not going to allow her to give answers in her condition.

(Mr. Seigel): What's the difference what her condition is?

(The Court): You have heard my decision."

We hold that it was an abuse of discretion not to have admitted the out-of-court declaration of the infant appellee. In terms of qualifying as an exception to the rule against hearsay, it might well have come in upon either of two distinct theories — by virtue of being an excited and spontaneous utterance or by virtue of having been a declaration against interest. The court, however, appeared to have ruled it inadmissible upon the grounds that it was, by virtue of the pain and fright of the declarant, too excited as opposed to being too cool and unexcited. We note that the condition of the declarant at the time of the alleged declaration was that she was suffering pain and fright but not that she was thereby out of her head, delirious or raving. Officer Gallagher, indeed, testified that although she was at one point "moaning, crying, or screaming," she was not "hysterical." He testified further that her condition changed, that she "calmed down a little bit, stopped crying." He concluded that,

"She was just a little upset, but she wasn't crying." If the ruling as to inadmissibility was based, as it seems to have been, on lack of competence in the declarant as opposed to a lack of an adequate guarantee of trustworthiness, we note that the test for competence was well set out by the Court of Appeals in *Perlin Packing Co. v. Price,* 247 Md. 475, 489:

> "As additional grounds for appeal they have objected to the court's striking the testimony of Lorenza Price, an eight-year-old passenger on the bus. A reading of the responses of this youthful witness to the questions of counsel fully demonstrates that, as was stated by the court, she either did not understand the questions as asked or did not know what she was saying when she attempted to answer them. The lower court exercised sound discretion in striking out her testimony. *Robert v. State,* 220 Md. 159, 165, 151 A. 2d 737, 739 (1959). We should also add that her testimony was of no probative value and it is not discernible that the appellants were prejudiced by its being stricken. *Maryland Chemical v. Monn,* 241 Md. 127, 215 A. 2d 731 (1966)."

In the instant case, we note that the answers allegedly given by the appellee-declarant were cogent, knowledgeable and clearly responsive. They do not indicate incompetence in any regard.

In *Terry v. O'Neal,* 194 Md. 680, objection was made to an out-of-court declaration in the nature of an admission upon the grounds that the declarant was incompetent due to mental incapacity. The Court of Appeals ruled that the declaration should have been admitted, saying at 687-688:

> "The appellant contends that the statements made by Terry to the police officers should not have been admitted. We find no merit in that contention. Regardless of whether the statements were admissible as spontaneous utterances or verbal acts ... they were admissible as admissions. ...

The appellants contend, however, that the statements should have been excluded because of the testimony that Terry was not in his right mind when they were made. However, there was undisputed testimony that Terry understood what was said to him and answered other questions intelligibly and accurately. Even imbeciles and lunatics have been permitted to testify where there is a showing of probable capacity. 'A witness should not be debarred from testifying on the ground of mental incapacity unless the proof of such disqualification is clear and conclusive.' *Johnston v. Frederick,* 140 Md. 272, 281, 117 A. 768; *Weeks v. State,* 126 Md. 223, 227, 94 A. 774; Wigmore, Evidence, 3d Ed., § 492."

The very physical shock, stress and nervous excitement which still the reflective faculties and remove their control are deemed by our jurisprudence to be the necessary precondition for the admissibility of a spontaneous, out-of-court declaration and not an impediment thereto, as the trial judge here felt them to be. The theory of admissibility was expressed in *Moore v. State,* 26 Md. App. 556, 562-563:

"The circumstantial probability of trustworthiness underlying this exception (as well as the superior quality of the evidence) has been thoroughly explored and well set out by the recognized authorities in this field. Dean Wigmore said at § 1747, 'General Principle of the Exception':

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made

under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.' "

See also *Mazur v. Scavone,* 37 Md. App. 695 (1977); *Jackson v. State,* 31 Md. App. 332, and *Estep v. State,* 14 Md. App. 53.

Since this case is being remanded for a new trial, it is unnecessary to discuss in any detail the appellant's second contention for the reason that the testimony from the investigating officer as to his expertise and, if admissible, as to his opinion as to the point of impact may come to the Court in slightly altered mode and might well generate a different ruling by a different trial judge. By way of general guidance, however, we would point out that police and fire investigators, with requisite experience, are frequently permitted to testify as to matters within their expertise, where that testimony would be of help to a jury in resolving the issue. *Nizer v. Phelps,* 252 Md. 185; *Home Insurance Company v. Metropolitan Fuels Company,* 252 Md. 407.

> *Judgment reversed; case remanded for new trial; costs to be paid by appellees.*